## MONTANA CENT. RY. CO. v. MIGEON et al.

(Circuit Court, D. Montana. June 22, 1895.)

No. 180.

1. MINES AND MINING—OVERLAPPING PLACER AND LODE CLAIMS—PRESUMPTIONS FROM PLACER PATENT.

The presumptions are all in favor of the validity of a placer patent as against a lode claim located subsequent to its issuance upon part of the same ground; and, where the patentee files an adverse claim against the application for patent to the lode, and brings an action in support thereof, the burden is upon the lode claimants to overcome these presumptions, and to show by clear and convincing proofs that the vein on which the lode claim was located was a known vein at the time of the application for the placer patent.

2. SAME.

In order that a vein or lode, included within the limits of a placer patent, shall be excluded from the operation of the patent, under Rev. St. § 2333, so as to be subject to subsequent location, such vein must have been known, at the date of the application for the placer patent, to exist, and to contain minerals in such quantity, and of such quality and value, as to justify, under the circumstances then existing, expenditures for the purpose of extracting them.

3. SAME—"KNOWN" VEIN—REV. ST. §§ 2320, 2333.

It seems that the requisites of a "known" vein, under Rev. St. § 2333, are different from those of a vein or lode which will justify a location under section 2320. Under the former the ledge must be known to be so valuable for its minerals as to justify expenditures for their extraction, while under the latter comparatively slight indications of a defined and mineral-bearing ledge have been held sufficient.

4. VALIDITY OF PLACER PATENT—COLLATERAL ATTACK—PRIOR LODE CLAIM.

The fact that a placer claim, for which a patent has been issued, included at the time of its location part of a lode claim which had not then been forfeited, is a matter which cannot be considered in a collateral attack upon the placer patent, by one who has made a subsequent vein location upon part of the same land after the issuance of the placer patent.

This was an action by the Montana Central Railway Company, which claimed to own certain land by virtue of conveyance from the

patentee of a placer mining claim, against A. F. Migeon and others. The action was brought in support of an adverse claim filed by plaintiff against an application by defendants for a patent for a lode or vein mining claim, which was located upon part of the lands covered by the placer patent subsequent to the issuance thereof.

H. G. McIntire and A. J. Shores, for plaintiff.
George A. Clark, for defendants.

BEATTY, District Judge.   With the announcement of the decision in this cause it is fitting to note the ability and courtesy of the counsel who conducted the trial.    While most clearly presenting the important issues, they did so with such happy comity towards each other, the witnesses, the court, and all interested, as rendered the supervision of the proceedings a pleasure instead of the wearying performance of a duty.   On July 2, 1877, the Morning Star lode claim was located 750 feet each way, easterly and westerly, from the discovery point in Summit Valley mining district, then in Deer Lodge, now Silver Bow, county, Mont.   October 15, 1878, the Noyes placer mining claim was located, and included within its limits about 730 feet of the west end of the Morning Star lode claim.   December 17, 1878, application for patent was made for such placer claim, and on July 28, 1880, patent was issued therefor, and subsequently a portion thereof was conveyed to plaintiff, and is now used for depot and other railway purposes.   January 1, 1882, the Childe Harold lode claim, now owned by defendants, was located at the discovery point of the Morning Star location, 50 feet easterly and 1,450 feet westerly from such point, a part of which is included in that portion of said placer claim so conveyed to plaintiff.   On September 27, 1887, the defendants made application for a patent to such Childe Harold claim, whereupon plaintiff brought this action in support of its adverse claim made in the land office to such application, and now asks that its title to the ground in conflict be quieted.

Involved in this action are the propositions:   (1) The annulment of the government's patent as to the ground in controversy;  (2) what is a known vein, as defined by section 2333, Rev. St.; and (3) whether such a known vein existed within the placer claim on the 17th day of December, 1878, the date of the application for patent therefor.

1. Lengthy discussions of the legal propositions would be profitless, for their solution seems to have been reached by the court of final resort.   The stability of a patent and the barriers to its successful assault are indicated in the Maxwell Land Grant Case, 121 U. S. 365–381, 7 Sup. Ct. 1029, where the supreme court says:

"We take the general doctrine to be that when, in a court of equity, it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt. If the proposition * * * is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal. In

this class of cases * * * the effort to set them [patents] aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated, and fully sustained by proof. * * * It should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful."

This is reaffirmed in Colorado Coal & Iron Co. v. U. S., 123 U. S. 307-317, 8 Sup. Ct. 131, which was an action by the government to vacate the patent for coal lands, wherein it is said that the proofs to do so must be "clear, convincing, and unambiguous"; and in U. S. v. Iron Silver Min. Co., 128 U. S. 673-676, 9 Sup. Ct. 195, being a direct action to cancel a placer patent because an alleged known lode was neither excepted nor paid for, the court says:

"The presumption attending the patent, even when directly assailed, that it was issued upon sufficient evidence that the law had been complied with by the officers of the government charged with the alienation of the public lands, can only be overcome by clear and convincing proof."

Without giving further attention to the views of that court upon this point, it must be concluded that all presumptions favor the validity of the placer patent; that the patentee had fully complied with the law in all respects; that at the time of his application the Childe Harold vein was not a known vein; and that, unless the defendants overcome these presumptions by clear and convincing proof, the plaintiff must prevail.

2. What constitutes a known vein under said section 2333 and the definitions of the courts, is not entirely clear. The question is more easily answered if it be conceded that the requisites of a vein which justify a location under section 2320 are different from those applied to a known vein under the other section. It must be admitted that but slight indications of a defined and mineral-bearing ledge have been held sufficient in many cases to support a location or a valid mining claim. Justice Field's definition in the Eureka Case, Fed. Cas. No. 4,548, is familiar,—that a lode "is a zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock." In North Noonday Min. Co. v. Orient Min. Co., 6 Sawy. 308, 1 Fed. 522, and in Jupiter Min. Co. v. Bodie Consolidated Min. Co., 11 Fed. 675, Judge Sawyer said it is "a seam or fissure in the earth's crust, filled with quartz carrying gold, silver, or other valuable mineral deposits named in the statute." In Mining Co. v. Cheesman, 116 U. S. 535, 536, 6 Sup. Ct. 481, is approved the following:

"A lode or vein is a body of mineral or mineral-bearing rock within well-defined boundaries in the general mass of the mountains. In this definition the elements are the body of mineral or mineral-bearing rock and the boundaries. With either of these things well established, very slight evidence may be accepted as to the existence of the other. A body of mineral or mineral-bearing rock in the general mass of the mountains, so far as it may continue unbroken and without interruption, may be regarded as a lode, whatever the boundaries may be. In the existence of such body, and to the extent of it, the boundaries are implied. On the other hand, with well-defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode. Such boundaries constitute a fissure, and if in such fissure ore is found although at considerable intervals, and in small quantities, it is called a lode or vein."

It is held that:

"When the locator finds rock in place, containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low." Book v Mining Co., 58 Fed. 120.

That "a valid location of a mining claim may be made whenever the prospector has discovered such indications of mineral that he is willing to spend his time and money in following it in expectation of finding ore, and that a valid location may be made of a ledge deep in the ground, and appearing at the surface, not in the shape of ore, but in vein matter only," is adopted in Burke v. McDonald (Idaho) 29 Pac. 101, and in Harrington v. Chambers (Utah) 1 Pac. 375. The last case, on appeal to the supreme court, was affirmed, but without discussing this proposition, which was involved in the appeal. 111 U. S. 350, 4 Sup. Ct. 428. It is needless to add to the above other similar definitions. They establish the liberal rule that it is not necessary, to the location of a valid claim under section 2320, that ore of commercial value in either quantity or quality must first be discovered within its limits. While the practical observer will commend the rule, it must be reasonably applied. To apply it to every seam or fissure which may be filled with matter containing traces of the precious metals, whether in or remote from mineral country, whether valuable or worthless as a mining claim, would be a perversion of a liberal law. The vein or lode which the statute directs must be discovered before the location of a claim must be one that, from all its indications, has a present or prospective commercial value, for only "lands valuable for minerals" are subect to appropriation as mining claims. Section 2318. Hence, in any case, it may be an open question whether a location includes land valuable for minerals, or whether it is based upon some barren seam or fissure which may be easily found in all localities in which there has been much disturbance of the earth's crust.

There are other and later authorities, which seem not only to modify the above, but also to emphasize the statute that the lands must be "valuable for minerals," by holding that to claim them as mineral they must be more valuable for that than for other purposes, and in defining a known ledge under section 2333 require stronger evidence of a vein and mineral deposits than is required by some of the courts for the location of a valid claim under section 2320; but they are generally cases similar to the one under consideration, of contests between parties claiming the same land for different purposes. Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, is a case of contest between the plaintiff, holding a placer patent, and defendant, claiming under an unpatented town-site location, in which, on page 404, 115 U. S., page 95, 6 Sup. Ct., the court says: "We say land known at the time to be valuable for its minerals, as there are vast tracts of public land in which minerals of different kinds are found, but not in such quantity as to justify expenditure in the effort to extract them. It is not to such lands that the term 'mineral,' in the sense of the statute, is applicable;" and then refers to the provisions of section 2318, by which "lands

valuable for minerals" are "reserved from sale" and for location as mineral lands.    U. S. v. Iron Silver Min. Co., 128 U. S. 673, 9 Sup. Ct. 195, was an action to cancel placer patents because veins had not been excepted.    At page 683, 128 U. S., page 195, 9 Sup. Ct., it is said:

"It is not enough that there may have been some indication, by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other metal to justify their designation as known veins or lodes. To meet that designation, the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation."

The case of Davis' Adm'r v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, was a contest between the owner of a patented lode claim and claimants under a prior town-site patent, in which is fully considered the question of exception of mineral lands from the operation of a town-site or other patent, and the characteristics of such lands, and approvingly refers to numerous rulings which hold, in effect, that they must be more valuable for minerals than for other purposes; and that it is not sufficient that they merely contain mineral, but that they must contain it in sufficient quantity to make them valuable as mineral lands; and, in harmony with what it had before said, the court says, on page 519, 139 U. S., page 628, 11 Sup. Ct.:

"There are vast tracts of country in the mining states which contain precious metals in small quantities, but not to a sufficient extent to justify the expense of their exploitation. It is not to such lands that the term 'mineral' in the sense of this statute is applicable."

And, after a review of the rulings, further, on page 524, 139 U. S., page 628, 11 Sup. Ct., that—

"It would seem from this uniform construction of that department of the government specially intrusted with supervision of proceedings required for the alienation of the public lands, including those that embrace minerals, and also of the courts of the mining states, federal and state, whose attention has been called to the subject, that the exception of mineral lands from grant in the acts of congress should be considered to apply only to such lands as were at the time of the grant known to be so valuable for their minerals as to justify expenditure for their extraction."

The case of Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 394, 430, 12 Sup. Ct. 543, is important, because, after it had been once submitted, the court ordered a reargument upon the questions of "what constitutes a 'lode or vein,' within the meaning of sections 2320 and 2333, of the Revised Statutes," and "what constitutes a known lode or vein, within the meaning of section 2333"; and, like the case at bar, it was a contest between the patentee of a placer claim and the claimant of a lode located after application made for patent to the placer claim.    On page 404, 143 U. S., page 543, 12 Sup. Ct., it is said:

"It is undoubtedly true that not every crevice in the rocks, nor every outcropping on the surface, which suggests the possibility of mineral, or which may, on subsequent exploration, be found to develop ore of great value, can be adjudged a known vein or lode within the meaning of the statute."

Then, after quoting the extracts above noted from 116 U. S. 536, 6 Sup. Ct. 481, and 128 U. S. 683, 9 Sup. Ct. 195, it concludes that—

"It is, after all, a question of fact for a jury. It cannot be said, as a matter of law, in advance, how much of gold or silver must be found in a vein before it will justify exploitation, and be properly called a 'known' vein."

It may be doubted that this decision directly modifies the former views expressed by the court that a well-defined mineral ledge must be proven to exist before a patent, issued for some other purpose, will be overthrown in its favor; but such modification seems to some extent to be implied from the quotation without disapproval of the liberal rule adopted in 116 U. S. and 6 Sup. Ct., supra, from the manner of its quotation, which seems to indicate that the court considered it somewhat antagonistic to other decisions, and from the argument of the dissenting opinion. However this decision may be viewed,—and it is cited with confidence by each party in this case,—the stricter view is adhered to in Dower v. Richards, 151 U. S. 658–662, 14 Sup. Ct. 452:

"The court held that if the ledge was not known, at the time of the acquisition of the town-site patent, to contain such an amount of minerals as to be valuable for mining purposes, it was not excepted from the operation of that patent. There can be no doubt that the decision of the supreme court of the state in this respect was correct. It is established by former decisions of this court that under the acts of congress which govern this case, in order to except mines or mineral lands from the operation of a town-site patent, it is not sufficient that the lands do in fact contain minerals, or even valuable minerals, when the town-site patent takes effect; that they must at the time be known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting them; and, if the lands are not known at that time to be so valuable for mining purposes, the fact that they have once been valuable, or are afterwards discovered to be still valuable, for such purposes, does not defeat or impair the title of persons claiming under the town-site patent."

The conclusion reached from the foregoing citations is that, before a patent for a placer claim can be canceled or modified upon application of a ledge claimant, the latter must establish by clear and convincing proof that at the date when the application was made for patent to the placer claim, either that such placer applicant knew, or might have known by reasonable inspection, inquiry, or diligence, or that the community generally knew (Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 402, 12 Sup. Ct. 543), that a mineral bearing ledge of rock in place existed within the limits of such placer claim; that such ledge was valuable for its minerals, which were in such quantity, and of such quality, as, under the then existing circumstances, would justify expenditure for the purpose of extracting them; and that more than merely indications of a mineral-bearing ledge must have then existed.

3. Has the evidence so shown within the limits of the Noyes placer claim, on the 17th day of December, 1878, the existence of such a mineral-bearing ledge or lode? Only the evidence of the conditions existing at the date named is pertinent. At that time two shafts or holes existed,—one at the discovery of the lode claim, and about 20 feet east of the east line of the placer claim; and the

other about 75 feet west of such line. Their depth at that time is not clearly shown, but the first was about 10 feet below the surface of the bedrock, and the other but a few feet deep, and of irregular dimensions. As to what was discovered in them the witnesses differ much. A review of the testimony will not be made, but only the impression it created stated. It is that a vein or fissure was developed in the discovery shaft, but that then there was not sufficient work done to show a vein in the other shaft; that, while the vein matter or contents of the ledge at the discovery shaft may have been such as justified the location of a lode claim under section 2320 and some of the rulings of the courts, it was not of such value as would then have paid, or even now pay, the expense of its extraction, or for the exploitation of the claim, and not such as the supreme court has held sufficient to justify the cancellation of a placer patent in support of a ledge claim in cases similar to this. Aside from the differing testimony of the witnesses, there are some established facts that strongly corroborate this conclusion. All the work done on this ledge prior to the application for the placer patent was done upon the Morning Star location, but which did not result in such development as induced the owners of that claim to hold it, for they abandoned it as worthless. The Childe Harold has been located for over 13 years. There does not seem to be any claim that more work than that necessary to hold it has been done thereon. The work consists of several shafts, easily and inexpensively made. There is no evidence to satisfy me that any of the work was done with the view of developing a valuable mine. While it is true that poor men, in these times of depressed price of silver, are not likely to do more work than they must, yet it is hardly to be expected that a claim held to be valuable for copper, as this is, would be carried by these defendants from the year 1885—when, as appears by their deed, in evidence, they purchased it for $75—to the present, practically without any effort to develop it into a valuable property. During the trial, witnesses spoke so freely of the location of mining claims about Butte City for surface purposes and value instead of for the minerals they contained, that the impression was left that it was no unusual thing in that vicinity to locate mining claims to be utilized as town lots, and this, too, without any apparent thought that it was illegal. That such has been the practice there, is confirmed from a plat exhibited during the trial, which showed the entire site of Butte City, and much of the adjoining country, covered with a blanket of mining locations, the lines of all fitting each other as closely and snugly as those of town lots and city additions. It is certainly true that nature has been most lavish in her mineral gifts to the locality of Butte City, for so many known great veins exist no place else on earth as there; but it must be doubted that mineral-bearing ledges within the meaning of the law are nearly so numerous anywhere as the mining locations are there, and it must be concluded that many of them were made without the sanction of law. It may not be that the Childe Harold was located, or is now held, merely for its surface value, but it is held that it has not been proven that on the 17th day of December,

1878, a known vein or lode existed within the limits of the Noyes placer claim.

That the placer claim included a part of what was the Morning Star, and was located before the latter had been forfeited, is an objection that cannot be considered in a collateral attack upon a patent, and, so far as concerns this proceeding, that defect was cured by the issue of the patent.

Other questions were referred to in argument, but it is deemed unnecessary to now consider them. Judgment must follow for the plaintiff as prayed, and it is now so ordered.