## McCarthy v. Speed *et al.*

1. Citizenship of one, and his rights to a mining claim dependent thereon, cannot be questioned in an action between him and other individuals to determine adverse claims to mining property.

2. The owner of an unpatented placer claim, or another with his consent, can locate a lode claim within the boundaries of the placer claim.

3. Persons who locate a lode claim, and record their location certificate, are estopped, as against one to whom they sell an interest in the claim after an examination of the records, to assert that there was no discovery to support the location.

4. One of the co tenants of a mining claim, who, on the annual assessment work thereon not being done, relocated the same, holds it as trustee for all the co-tenants, notwithstanding Rev. St. U. S. § 2324, providing that on a failure to comply with conditions as to labor or improvements, the

claim shall be "open to relocation in the same manner as if no location of the same had ever been made."

(Opinion filed December 21, 1898.

Appeal from circuit court, Pennington county. Hon. WILLIAM GARDNER, Judge.

Action by Patrick B. McCarthy against Edward W. Speed, administrator of Wm. B. Franklin, deceased, and others, to determine conflicting claims to certain mining property. Judgment for defendants. Plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Charles W. Brown* and *McLaughlin & McLaughlin*, for appellant.

*James W. Fowler, Loomis S. Cull* and *Fred H. Whitfield*, for respondents, except Fayel.

*W. O. Temple* and *A. K. Gardner*, for respondent John J. Fayel.

HANEY, J. This action, brought for the purpose of determining adverse claims to certain mining property, was tried by the court, and resulted in a judgment wherein the claims of plaintiff are adjudged to be invalid. He appeals from such judgment and from an order denying a new trial.

From the findings of the trial court the following facts appear: On September 16, 1882, Jacob F. Reed and William Franklin located a portion of the ground in controversy as the Reed placer mining claim. From the date of location until 1892 Reed and Franklin were in actual, notorious and peaceable possession of the claim, were acknowledged and reputed to be its owners, and during each year performed the required development work. They applied for patent November 23,

1892. Final entry was made March 13, 1893. There was no application for a lode on the placer site aside from the placer claim. The boundaries of the claim as patented coincide with its boundaries as staked upon the ground at time of location. January 25, 1888, Reed, Franklin, Thomas C. Blair, and Frank Eaton marked the boundaries of Tin Bar No. 1 claim upon the ground with stakes, as required by law, posted a discovery or location notice thereon, and within 60 days thereafter recorded a location certificate, but did no other act of location at that time. The location or discovery notice of this claim was posted inside the boundaries of the Reed placer claim, and the point claimed as discovery on the Tin Bar No. 1 is the same point at which the notice was posted. No labor has been performed or improvement made upon the claim, except about four days work in 1889 and about four days work in 1891; such work not exceeding $14 in each of those years. There was no agreement on the part of defendants Blair or Franklin with plaintiff to perform labor or make improvements on Tin Bar No. 1 in 1893 or 1894, and no contractual relation existed between them in regard to such claim when the Holy Terror lode claim was located. January 25, 1888, Blair and Eaton did the same acts of location with respect to Tin Bar No. 2 that were done in respect to Tin Bar No. 1. No labor has been performed, or improvement made, upon Tin Bar No. 2, except about four days work in 1891, of value not exceeding $14. There was no agreement on the part of defendants Franklin or Blair with plaintiff to perform labor or make improvements upon Tin Bar No. 2 in 1892, 1893, or 1894, and there was no contractual relation existing between them in regard to such claim during those years. Defendant Franklin located the lode claims Holy Terror and

Keystone No. 4 on June 28, 1894, and September 20, 1894, respectively, and the law has been complied with. so far as it relates to those claims, since the date of each. Defendants are the owners of the Holy Terror and Keystone No. 4, save for the rights of the plaintiff in this action. No adverse was filed by plaintiff or other owners of either Tin Bar No. 1 or 2 to the application for patent to the Reed placer claim. At and prior to the time of the application for patent to the placer claim there was no known lode or vein thereon within the boundaries of either Tin Bar claim of such character as to render the ground more valuable because of its presence. or to justify the expenditure of money for either exploitation or development. There was no application for patent to any lode or vein included in the placer claim in the application for patent to the placer claim. The Holy Terror embraces 1.62 acres of the ground covered by Tin Bar No. 1, and Keystone No. 4 embraces 2.71 acres of the ground covered by Tin Bar No. 2. In 1888, Eaton conveyed an undivided one-fourth interest in Tin Bar No. 1 and Tin Bar No. 2 to one George Williams, who, in the same year, conveyed the same interest to plaintiff and one Michael Mc Guire. On April 22, 1890, Eaton conveyed an undivided one-fourth interest in Tin Bar No. 2 to defendant Franklin, and Blair conveyed a like interest therein to Jacob F. Reed. When this action was commenced, Franklin (since deceased) and defendants Blair, Fayel, and Amsbury each owned an undivided one-fourth interest in the Holy Terror claim, and an undivided seven thirty-sixths interest in Keystone No. 4. Blair acquired his interest in the Holy Terror claim with full knowledge of whatever rights the plaintiff had, if any. During 1891, Blair and Franklin discovered a well-defined ledge of mineral-bear-

ing rock in place, carrying gold, upon Tin Bar No. 2, the point of discovery being outside the limits of Reed placer claim. The location notice on Tin Bar No. 1 was posted upon a well-defined ledge of rock carrying tin, but plaintiff and defendants had no knowledge of the existence of tin or other valuable deposit therein until during the trial of this action in the court below. There was no proof that the plaintiff is, ever was, or ever declared his intention of becoming, a citizen of the United States.

It will be assumed that the evidence sustains the findings of fact. Do they support the judgment? Defendants cannot question plaintiff's citizenship in this action. Manuel v. Wulff, 152 U. S. 505, 14 Sup. Ct. 651. It is the theory of plaintiff that he owned an interest in each of the Tin Bar lode claims upon which the annual assessment work was not done; that a portion of the ground covered by each was relocated by his co-tenant as the Holy Terror and Keystone No. 4; that such relocations were valid, but that the relocators should be adjudged to be his trustees to the extent of his interest in the Tin Bar claims. This theory necessarily involves the validity of the Tin Bar locations. It is contended by defendants that neither claim ever existed, for the reason that there was no actual discovery within its limits; that the Tin Bar No. 1 discovery notice was posted within the boundaries of the then subsisting unpatented placer claim; and that, if the Tin Bar location was originally valid, the claim ceased to exist when the placer claim was patented. It seems to be well settled that a stranger cannot locate a lode claim within the limits of another subsisting unpatented lode claim, but our attention has not been called to any decision which applies this rule to unpatented placer claims. In Mr. Lindley's recent work this language is found: ''The

policy of the government with reference to lodes is to sever them from the body of the public lands, and to deal with them and the land immediately inclosing them as separate and distinct entities. The location of mining ground for placer purposes does not effect such severance. The placer claimant may, in the absence of a discovery and location by others, obtain the title to the lode, but he has not such right by virtue of his prior placer appropriation. This right to appropriate the lode must flow from the discovery of the lode. Whosoever first discovers the lode may appropriate it by complying with the laws conferring privileges upon such discoverers. If he fails to do so, it is open to the next comer; and this rule applies to the placer claimant as well as to strangers. If, having discovered it, he fails to manifest his intention to claim it by appropriating it under the lode laws, it may be the subject of appropriation by others, the same as if it were upon the public domain; provided, always, that such appropriation is made and perfected peaceably, and in good faith." 1 Lindl. Mines, § 413. However this may be with respect to strangers, there is certainly no reason for holding that the owner of an unpatented placer claim cannot locate a lode claim, or consent to such a location being made by others, within the boundaries of his placer claim. Under such circumstances it would hardly be logical to regard the placer owner as a trespasser upon his own premises, and, as we shall attempt to show hereafter, the defendants are estopped from questioning the validity of the Tin Bar claims to the injury of plaintiff.

We think the learned circuit court erred in concluding that the Tin Bar No. 1 claim was invalid in its inception because its point of discovery was within the boundaries of the placer claim.

If the Tin Bar claims were located when application for patent to the placer was made, they were not affected thereby, no application for lodes having been included in the application for the placer patent. Noyes v. Mantle, 127 U. S. 348 8 Sup. Ct. 1132; Iron Silver Mining Co. v. Mike & Starr Gold & Silver Min. Co., 12 Sup. Ct. 543. As to what constitutes a discovery within the meaning of the federal statutes has caused the courts no little trouble. It might be difficult to determine, in this case, from the findings of the trial court, whether any discovery was ever made upon either Tin Bar claim; but are these defendants in position to allege or prove, as against the plaintiff that the declarations contained in the recorded location certificates were false, and that no discoveries were, in fact, ever made? We think not. Can the locators of these claims be heard to contradict their own recorded representations, to the injury of this plaintiff? It is disclosed by the evidence that plaintiff purchased his interest in the Tin Bar claims for a valuable consideration, after an examination of the records, relying upon the location certificates which were placed upon the public records by the locators for the purpose of selling the property as mining claims. Where one, by his conduct, intentionally causes another to believe in the existence of a certain state of facts, and induces him to act on that belief, the former is estopped from averring against the latter the existence of a different state of facts at the same time. The locators of these claims, with actual knowledge of the facts caused location certificates to be recorded, thereby representing that discoveries had been made on each, with the expectation and intention of inducing persons who might examine the records to believe that they were the owners of properly located mining claims. This con-

duct produced intended results. They sold an interest in the claims. Plaintiff examined the records, was induced to believe that the claims had been legally located, and acted on such belief. Whatever rights he has in this action depend upon the facts which the conduct of the locators induced him to believe existed when his interest in the claims was acquired. It would be a travesty on justice to permit the locators to now impair such rights by asserting that their recorded representations were false. Neither of the defendants is in any better position than the original locators, and all are estopped from denying the validity of the Tin Bar locations.

It being determined that, for the purposes of this action, the Tin Bar claims were valid in their inception, the main controversy is whether, when the annual assessment work has not been done upon a mining claim, one co-tenant therein can relocate the same, and obtain title thereto, not only as against the world, but as against his co-tenants. We are not aware that the precise question here presented has ever been decided by any court of last resort. It is well settled that co-tenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all. This principle arises from the privity subsisting between parties having a common possession of the same land, and a common interest in the safety of the possession of each, and it only inculcates that good faith which seems appropriate to their relative position. Venable v. Beauchamp, 3 Dana, 321. It has been applied to mining property by the federal supreme court. In a case in that court, where one had acquired an interest in an un-

patented claim by purchase at sheriff's sale, and obtained a
patent to the entire property to the exclusion of another, who
was found to own an interest therein, it was decided that the
patentee held the title in trust for his co-tenant; that a court of
equity would enforce the trust; and that the excluded co-tenant
was not required to adverse the application for patent. Tur-
ner v. Sawyer, 150 U. S. 578, 14 Sup. Ct. 192. Therefore the
only question to be determined in this connection is whether
the relation of co-tenant existed between plaintiff and Franklin
when the latter located the Holy Terror and Keystone claims.
'A mining claim perfected under the law is property in the
highest sense of that term, which may be bought, sold, and
conveyed, and will pass by descent." Belk v. Meagher, 104 U.
S. 279. Actual possession of the claim is not essential to the
validity of the title obtained by a valid location, and until such
location is terminated by abandonment or forfeiture, no right
or claim to the property can be acquired by an adverse entry
thereon with a view to the location thereof. Belk v. Meagher,
*supra.* Abandonment is always a question of intention. In
ferfeiture the element of intention is not involved. It rests en-
tirely upon the statute, and involves only the question whether
the terms of the law have been complied with. Lapse of time,
absence from the ground, or failure to work a claim for any
definite period, unaccompanied by other circumstances, are not
evidence of abandonment. Original locators may resume work
at any time before relocation. Forfeiture is not complete until
some one else has appropriated the property. 2 Lindl. Mines,
644; Rev. St. U. S. § 2324. Plaintiff and Franklin continued
to be co-tenants so long as the Tin Bar claims continued to ex-
ist. They continued to exist until the ground was relocated,

and during every instant of that time the latter was, in law, incapable of performing any act in hostility to his co-tenant in reference to the joint estate.   Franklin was plaintiff's co-tenant at the time he entered the boundaries of either Tin Bar claim for the purpose of relocating the ground.   His entry for that purpose was hostile to his co-tenant unless he intended to relocate for the benefit of all the owners of the Tin Bar claims. It may be that he owed no duty to his co-tenants to represent the claims: it may be that he was at liberty to refrain from performing any act in reference thereto; but if he elected to act at all, he was bound to act for the benefit of all the owners.   His acts of relocation did not terminate the fiduciary relation between himself and plaintiff, because they were, if done for the purpose of defeating the rights of his co-tenant, in hostility to his interests, and, if they were not done for that purpose, they, of course, operated to the benefit of all the owners.   We think the circuit court should have adjudged the defendants to be trustees, and have enforced the trust.   This conclusion is not precluded by the language of the federal statutes.   They provide that upon a failure to comply with required conditions as to labor or improvements "the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made."   Rev. St. U. S. § 2324.   It is contended that, if congress intended to have the relocator regarded as a trustee under any circumstances such intention would have been expressed in the statute.   The contention is not tenable.   The trust results from the fiduciary relation of the parties, and not from the operation of the statute,   If such relation exists between an original locator and another, and he secures a patent, no one will deny that he may

be adjudged to hold the property in trust for such person, or if a relocator sustains such relation to a third person, the latter's rights may be enforced in equity. If this be true, there is no reason for making a different rule as to co-tenants. The relocator is permitted by the statute to acquire the property in the same manner that the original locator would have acquired it, but because of his relations to another who may be a co-tenant, a mortgagee, or person having no estate in the property, he will be adjudged to hold the title in trust for such person. In all cases of this character the trust depends upon the relation of the parties, not upon the manner in which title is acquired.

It is contended that the rule herein announced is contrary to public policy, and will result in endless embarrassment and confusion to a class of rights already sufficiently uncertain. We reply that a sound public policy always requires honesty and fair dealing. The federal statutes provide a most arbitrary and summary manner, commonly called "advertising out," in which one owner of a mining claim may compel his co-owners to contribute their share of assessment work, or cease to have any interest in the claim. An adequate method is thus provided for enforcing the rights of co-owners in respect to the development of mining property—one that should satisfy the demands of all persons who desire to act fairly with their business associates.

It is urged in argument of counsel for appellant that the judgment below should be reversed, and the cause remanded, with directions to enter judgment for plaintiff. This, we think, should not be done. All the facts upon which we predicate an estoppel are not contained in the findings of fact. This court cannot supply such facts, and without them the

decision of the trial court would not sustain a judgment in favor of the plaintiff. The judgment and order denying a new trial are reversed, and a new trial ordered.