[S. F. No. 4823. In Bank. December 22, 1908.]

## JAMES MADISON et al., Respondents, v. OCTAVE OIL COMPANY (a Corporation), et al., Appellants.

QUIETING TITLE—ENTRY OF PLAINTIFFS' DEFAULT TO CROSS-COMPLAINT —SUBSEQUENT TRIAL ON MERITS—WAIVER OF RIGHT TO JUDGMENT BY DEFAULT.—In an action involving the title and the right of possession of land, where the defendants file a cross-complaint alleging title in themselves, and praying to have it quieted, to which the default of the plaintiffs was entered, and thereafter the plaintiffs, with the consent of the defendants, file an amended complaint setting up title in themselves and praying for the same relief, and a trial is had upon the issues raised as to the title, such conduct by the defendants will be treated as a waiver of their right to have had judgment entered in their favor, upon the plaintiffs' default to their cross-complaint.

MINING CLAIM—GYPSUM.—Gypsum is a mineral and lands containing it are mineral lands, within the meaning of the statutes of the United States providing for the location of mining claims.

ID.—LAND VALUABLE FOR MINERALS—VALIDITY OF LOCATION.—Under section 2318 of the Revised Statutes of the United States, reserving from sale lands *valuable* for minerals, and section 2319, opening for exploration and purchase all *valuable* mineral deposits in lands belonging to the United States, it is not sufficient to validate a location that there be some trace or indication of mineral in the land. There must be minerals in such quantity as to justify the expenditure of effort to extract them. It is not necessary, however, that mineral of sufficient amount and value to allow immediate profitable working be shown to exist in the land. It is enough if the vein or deposit has a present or prospective commercial value.

ID.—FINDINGS—CONFLICT OF EVIDENCE—APPEAL.—In an action involving the legality of a location of a placer mining claim, findings that the locator had made a discovery thereon of a valuable deposit of gypsum, and had made the location on that account and not on account of oil which the land might contain, will not be disturbed on appeal, when the evidence with reference to such matters is conflicting.

ID.—FAILURE TO PERFORM ASSESSMENT WORK—SUBSEQUENT LOCATION —RESUMPTION OF WORK—RIGHTS OF MERE POSSESSION.—Under section 2324 of the United States Revised Statutes, a failure to do the assessment work upon a mining claim does not operate to terminate the locator's right in favor of a person who has merely taken possession of the claim; the sole effect of such failure, there being no abandonment, is to throw the land open to location by others, and, in the absence of such other location, the original claimant's right to resume work and to hold his claim remains.

ID.—TIME TO PERFORM ANNUAL WORK—ADVERSE POSSESSION TAKEN BEFORE TIME HAS EXPIRED.—Where the location of a mining claim is made on the first day of January, 1903, the locator has all of the year 1904 within which to do the annual assessment work; and persons who, in the interval, take and hold adverse possession of the land, even if they claim under an adverse location, cannot be heard to object that the original locator failed to do the annual assessment work while they were in adverse possession of the claim.

APPEAL from a judgment of the Superior Court of Fresno County. George E. Church, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellants.

Everts & Ewing, and N. C. Coldwell, for Respondents.

SLOSS, J.—The plaintiffs recovered judgment in an action involving the title and the right of possession of a forty-acre tract of land in Fresno County. The defendants appeal from the judgment on a record including a bill of exceptions.

The original complaint alleged that on January 1, 1903, the plaintiffs made a valid location of land in controversy as a mineral placer claim; that in February, 1904, other parties, including some of the defendants, attempted to locate the same claim. The plaintiffs, it was alleged, made several attempts to go upon said claim and do the necessary assessment work for the year 1904, but were forcibly ejected by the defendants. The relief sought was an injunction restraining the defendants from interfering with plaintiffs in the performance of the annual assessment work for 1904; and, further, that plaintiffs' title be quieted. The defendants, Octave Oil Company and O'Donnell answered, denying many of the material allegations of the complaint. With the answer there was filed, on behalf of the oil company, a cross-complaint, alleging that said corporation was the owner, subject only to the paramount title of the United States, and entitled to the possession of the forty acres in dispute, and seeking to quiet its title against the adverse claims of the plaintiffs. The default of plaintiffs to this cross-complaint was entered on February 24, 1906.

Subsequently the plaintiffs filed an amended complaint, which, like the cross-complaint above mentioned, was a simple complaint to quiet title and recover possession. It alleged ownership (subject to the title of the United States) and a right of possession in plaintiffs, averred an ouster by defendants on February 1, 1904, and prayed that plaintiffs be declared the owners of the property and be put in possession thereof.

This amended complaint was filed on February 26, 1906, after the case had been called for trial. Plaintiffs having asked leave to file it, counsel for defendants stated that he had no objection, but that, inasmuch as it "changed the cause of action," he desired time to answer, on the understanding that the trial should then go on and that, until an answer could be prepared, the allegations of the amended complaint should be deemed denied. No reference was made to the default which had been entered. The trial proceeded on the issues so raised. Before it was concluded, the defendants filed an answer, denying many of the allegations of the amended complaint, and setting up affirmative matter as a defense. The court found that all the allegations of the amended complaint were true.

It is now argued by appellant Octave Oil Company, that it was entitled to a judgment upon plaintiffs' default to the cross-complaint. That a default to a complaint confesses the truth of all of its allegations is, of course, elementary. (*McGregor* v. *Shaw*, 11 Cal. 47; *Rowe* v. *Table Mountain Water Co.*, 10 Cal. 441; *Himmelman* v. *Spanagel*, 39 Cal. 401; *Hutchings* v. *Ebeler*, 46 Cal. 557.) But it is equally elementary that a legal right may be waived. Where a party has proceeded in the lower court in a manner inconsistent with an intent to assert a right to which he might be entitled, he will not, on appeal, be permitted to shift his position, and claim, for the first time, a benefit which he has rejected at all prior stages, of the proceeding. The amended complaint and the cross-complaint presented substantially the same issues. The sole question was whether the plaintiffs or the defendants owned the land and were entitled to its possession. A judgment in favor of the oil company on its cross-complaint would have so disposed of this question as to render it impossible to give to plaintiffs any relief on their amended complaint, and to make

futile a trial of the issues tendered by that complaint. If the oil company had intended to stand upon the rights conferred upon it by the default, its natural and proper course would have been to demand judgment in its favor, and object to the filing of the amended complaint. It did neither of these things, but voluntarily proceeded to a trial of the very issues which it now claims had already been determined in its favor. This conduct must be treated as a waiver and abandonment of its cross-complaint and of the default.

The land in dispute was a part of the public domain of the United States. For proof of their title, the plaintiffs relied on a location of the same as a placer mining claim, and proved compliance with the statutory requirements. It is contended by appellants that there had been no such discovery of mineral as would justify the location under the laws of the United States. The claim in question was located for respondents on January 1, 1903, by Albert Walter Albrecht. He testified that at that time he found upon the land a deposit of gypsum, and that he located the claim for gypsum. Other witnesses testified to the extent of the deposit, one saying that it was one hundred feet long, twenty feet in width, and several feet in depth; another that it covered sixty by two hundred feet, and that there were from three hundred to five hundred tons in sight at one place; another that the cropping was one hundred and twenty or one hundred and thirty feet long and two feet thick. Several witnesses who had had experience in mining for gypsum expressed the belief that the deposit was sufficient in quantity to justify a reasonable man in locating and working the claim for gypsum.

That gypsum is a mineral and that lands containing it are mineral lands, within the meaning of the statutes of the United States, are propositions that are not disputed by the appellants. (1 Lindley on Mines, sec. 97.) The argument is, however, that the evidence failed to show a *valuable* mineral deposit within the meaning of the federal laws. Section 2318 of the Revised Statutes of the United States [U. S. Comp. Stats. 1901, p. 1423], reserves from sale lands *valuable* for minerals, while section 2319 [U. S. Comp. Stats. 1901, p. 1424], opens for exploration and purchase all *valuable* mineral deposits in lands belonging to the United States. Under these statutes it is not enough that there be some trace or indication

of mineral in the land. There must be minerals "in such quantity as to justify the expenditure of effort to extract them." (*Deffeback* v. *Hawke,* 115 U. S. 392, [6 Sup. Ct. 95] ; see, also, *Montana Cent. Ry. Co.* v. *Migeon,* 68 Fed. 811; *Davis Admr.* v. *Weibbold,* 139 U. S. 507, [11 Sup. Ct. 628] ; *United States* v. *Iron Silver M. Co.,* 128 U. S. 673, [9 Sup. Ct. 195].) It is not necessary, however, that mineral of sufficient amount and value to allow immediate profitable working be shown to exist in the land. It is enough if the vein or deposit "has a present or prospective commercial value." (*Montana Cent. Ry. Co.* v. *Migeon,* 68 Fed. 811.)

Clearly the evidence above recited was ample to justify the trial court in finding that there had been a discovery of a valuable mineral deposit. There was testimony of contrary tendency, but a conflict of evidence presents no question for the appellate court. The appellants contend that the land had in fact been located by respondents on account of the oil which it might contain, and that the showing that it held gypsum was a mere subterfuge. This, however, was a matter to be determined by the trial court, and there was certainly no lack of evidence tending to support the conclusion reached.

The only other point made by appellants is that the court erred in striking out the special defense set up in the answer. The allegations of this part of the pleading were that the Octave Oil Company had, since the first day of February, 1904, been in the actual and exclusive possession of the land in controversy; that plaintiffs' claim of title was by virtue of an alleged location under the laws of the United States, made on January 1, 1903, and that plaintiffs had not performed work or made improvements to the amount of one hundred dollars upon the land during the years 1903 and 1904, nor during the year 1905. The defendants do not, in their pleading, claim under a subsequent, conflicting location. They rely solely on actual possession, taken after the posting and recording of plaintiffs' notice of location. The authorities are clear to the effect that a failure to do the assessment work does not create a forfeiture in favor of one occupying the position of defendants. The statute which requires that "one hundred dollars' worth of labor shall be performed or improvements made" declares that "upon a failure to comply with these conditions, the claim or mine upon which such fail-

ure occurred shall be open to relocation in the same manner as if no location of the same had ever been made; provided, that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after such failure and before such location." (U. S. Rev. Stats., sec. 2324, [U. S. Comp. Stats. 1901, p. 1426].) It is not provided that a mere failure to comply with the statutory requirement shall terminate the locator's right; the sole effect of such failure is to throw the land open to location by others, and, in the absence of such other location, the original claimant's right to resume work and to hold his claim remains. (See *McCormick v. Baldwin*, 104 Cal. 227, [37 Pac. 903]; *Emerson v. McWhirter*, 133 Cal. 510, [65 Pac. 1036].) "While a claim is subject to relocation for failure to perform the requisite annual labor, no forfeiture is worked, and the estate of the locator is not divested until there has been a peaceable entry for the purpose of relocation. The right of the original claimant is terminated only by the entry of a new one." (2 Lindley on Mines, sec. 645; *Beals* v. *Cone*, 27 Colo. 473, [83 Am. St. Rep. 92, 62 Pac. 948, 958]; *McCarthy* v. *Speed*, 11 S. Dak. 362, [77 N. W. 590].) (There may, of course, be an abandonment of a location, but no question of abandonment is here presented.)

But beyond all this, the respondents had all of the year 1904 within which to do the annual work. (21 U. S. Stats. at Large, p. 61, [U. S. Comp. Stats. 1901, p. 1426].) It is admitted by the pleadings, in fact, affirmatively alleged in the answer itself, that the defendants took possession of the claim in February, 1904, and have held such possession, adversely to the plaintiffs, ever since. The defendants, even if claiming under an adverse location, could not be heard to object that plaintiffs did not do the annual labor required by law while they (defendants) remained in adverse possession of the claim. (*Mills* v. *Fletcher*, 100 Cal. 142, [34 Pac. 637]; *Trevaskis* v. *Peard*, 111 Cal. 599, [44 Pac. 246].)

It follows that the facts specially pleaded stated no defense, and that the court did not err in striking out this part of the answer.

The judgment is affirmed.

Shaw, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.