[S. F. No. 3004. Department Two.—May 8, 1905.]

MAX GOLDBERG, Appellant, v. DEMETRIO M. BRUS-
CHI, Respondent.

MINING CLAIM—ACTION TO QUIET TITLE—PRIMA FACIE CASE—PRESUMP-
TION.—In an action to quiet title to a mining claim, the plaintiff
makes a *prima facie* case by showing his citizenship, discovery
of mineral on the land, and a location in conformity to law, and that
the land is public land. The land so located is presumed to have
been unoccupied, and the plaintiff need not prove that fact.

ID.—DEFENSE—PRIOR LOCATION—BURDEN OF PROOF.—After proof of
plaintiff's case, the burden is on the defendant to show a location
prior in time and superior in right to that of the plaintiff.

ID.—REBUTTAL—FAILURE TO DO ANNUAL WORK—BURDEN OF PROOF—
PLEADING.—Where the defendant proves a prior location, the burden
is on the plaintiff to prove a failure of the defendant to do the
required annual work; and this he has a right to do in rebuttal,
without any averment to that effect in his complaint.

ID.—POSSESSION OF DEFENDANT AFTER FAILURE OF WORK—VALIDITY OF
RELOCATION.—Where it appears that the defendant did no work
on a mining claim at any time subsequent to its location, as re-
quired by law, it ceased to have any validity as against a valid
relocation by the plaintiff, and the mere possession of the claim
by the defendant, whether actual or constructive, without develop-
ment work, cannot prevent such relocation.

APPEAL from a judgment of the Superior Court of Mari-
posa County. John M. Corcoran, Judge.

The facts are stated in the opinion.

Leon Samuels, and J. J. Trabucco, for Appellant.

J. B. Curtin, and Congdon & Congdon, for Respondent.

CHIPMAN, C.—Action to quiet title to mining land. The
cause was tried by the court, and defendant had judgment,
from which plaintiff appealed on bill of exceptions.

The findings are made up largely of probative rather than
of ultimate facts. It was found: 1. That one Francisco
Bruschi, on March 15, 1885, located a quartz-mining claim,
the Quail Quartz Mine, six hundred feet wide and fifteen hun-
dred feet long, in Mariposa County, particularly described

in the findings; that by mesne conveyances afterward,—to wit, October 13, 1897,—the said mine became the property of defendant. 2. That defendant on January 1, 1897, located a quartz-mining claim of the same extent as the said Quail Quartz Mine, and adjoining it on the southerly end thereof, called the Last Chance Quartz Mine, particularly described in the findings. 3. That prior to the month of December, 1899, defendant "did let, bond, and agree to convey" said two mines "to the Quail Mining Company," and that during all of said month of December, and the month of January, 1900, said company was in possession of said mines, and "did cause to be erected upon said Quail Quartz Mine, improvements consisting of hoisting works, barn and blacksmith shop and other buildings of the value of more than three thousand dollars, and had extended two tunnels and drifts that were on the said Quail Quartz Mine." 4. That during the month of December, 1899, one Barion entered upon a portion of said Quail Quartz Mine referred to in the foregoing paragraph 3, and attempted to make a location under the name of the East Quail Quartz Mining Claim, by including a portion thereof together with other lands, thus conflicting with said Quail Quartz Mine to the extent of 7.34 acres, particularly described in the findings. 5. That plaintiff, through the said Barion, in the said month of December, also entered upon said Last Chance Quartz Mine, and made a location named the Indian Creek Quartz Mining Claim, a part of which so located embraced a portion of said Last Chance Mine, and conflicted with said Last Chance Mine to the extent of about 12.94 acres, and also conflicted with said Quail Quartz Mine to the extent of 0.093 acres. 6. That at the time said Barion made said locations he well knew that defendant was the owner of said Quail Quartz Mine and said Last Chance Quartz Mine, and knew that defendant had agreed to sell the same to said corporation, and knew that said company was in possession of each of said claims and had expended large sums of money in working the same.

As conclusions of law the court found: 1. That the defendant was, at the time the locations were made under which plaintiff claims, the owner of the said Quail Quartz Mine and the said Last Chance Mine. 2. That in the absence of any issues raised by the pleadings, and in the absence of any

proof by plaintiff, that the work required to be done under section 2324 of the Revised Statutes of the United States, was not done on defendant's said claim for the year 1899, he, defendant, "is entitled to the presumption of law that the law had been complied with, and that the amount of work required to be done upon each of said quartz mines . . . was done during the year 1899." 3. That plaintiff has no right to or interest in the portions of his said claim which lie within the exterior boundaries of defendant's said claims.

Defendant had judgment in accordance with the foregoing, and it was also adjudged that plaintiff has no right to or interest in the said locations of plaintiff outside of the exterior lines of the said locations of defendant.

The pleadings were verified. Plaintiff did not in his complaint allege that defendant had forfeited his title to the mines or either of them claimed by him,—i. e. did not plead forfeiture,—nor did he offer any evidence of forfeiture in his opening case. After defendant had submitted his evidence of ownership, plaintiff in rebuttal sought to prove that as to the Last Chance Mine defendant had forfeited his location by failure to do the work required by the Revised Statutes of the United States. Defendant objected on the ground that plaintiff had not pleaded abandonment or forfeiture. The court ruled that it would admit no testimony showing forfeiture or abandonment of the Last Chance by defendant. Plaintiff thereupon moved the court for leave to amend his complaint by alleging that "defendant has failed to perform any assessment work on or for the Last Chance Claim, either in the year 1897, 1898, or 1899, or at any time since the location thereof, and that said defendant has forfeited his said claim." The ground urged for the amendment was "that plaintiff was taken by surprise by the ruling of the court," and that plaintiff had relied upon his view of the law that "no proof of forfeiture could be made until defendant had shown the nature of his title, and that until then plaintiff was not called upon to plead or prove forfeiture." The court denied the motion. These rulings are urged as error.

Plaintiff specified numerous other errors, particularly as to the insufficiency of the evidence to support certain of the findings. The principal question presented by the appeal arises out of the rulings of the court above stated. The view

taken by counsel for defendant, and apparently followed by the trial court, seems to have been that plaintiff could recover only on the strength of his own title, and that if he expected to show that the title of defendant, whatever it might be, was for some reason forfeited, he should have so alleged in the complaint and proved it in his opening case; and that not having done so, the refusal of the court to allow him to amend the complaint was not error, for the evidence would not be proper in rebuttal. It is true that in an action to quiet title ·to land the burden rests upon the plaintiff to show title in himself, failing which he is not entitled to recover. (*San Francisco* v. *Ellis,* 54 Cal. 72; *Winter* v. *McMillan,* 87 Cal. 256;[1] *Heney* v. *Pesoli,* 109 Cal. 53; *McGrath* v. *Wallace,* 116 Cal. 548; *Weed* v. *Snook,* 144 Cal. 439; *Schroder* v. *Aden Gold Mining Co.,* 144 Cal. 628.) This rule, however, does not require that plaintiff shall in opening his case show that the title which the defendant may plead in his answer has been for some reason forfeited. Plaintiff may not, and often does not, know what the adverse interest of defendant is against which plaintiff seeks to quiet his title. How then can he be expected to anticipate defendant's answer and plead forfeiture? When the answer came in it was deemed to be denied. Of course, if plaintiff has shown no title or right of possession, and defendant is in possession, it is immaterial by what right defendant holds possession, and plaintiff cannot recover. Defendant's mistake and the error of the court probably arose from the mistaken belief that plaintiff should have shown, as part of his case, that defendant's pretended title was invalid and that he could not do this in rebuttal. When plaintiff made his proof, as he did, of citizenship, and that he had made a discovery of gold-bearing quartz in the land and had shown a location according to the requirements of the law, he established his case *prima facie,* and he was not called upon to make further proof that the land was unoccupied mineral land of the United States. It was shown to be public land, and the presumption is that all public land is unoccupied. Plaintiff's claims were located in December, 1899, and he had all of the year 1900 in which to do assessment work, and the action was brought in January, 1900. The burden was then put upon defendant to show that the location under which he

[1] 22 Am. St. Rep. 243.

claimed title was prior in time and superior in right. It was held in *Trevaskis* v. *Peard,* 111 Cal. 599, that "evidence of abandonment may be given without a special plea under a denial of title"; and in *Contreras* v. *Merck,* 131 Cal. 211, it was held not necessary for plaintiff to plead a forfeiture or abandonment of a prior location made by defendant.

Defendant contends that the contrary rule was held in *Quigley* v. *Gillett,* 101 Cal. 462, and in *Harris* v. *Kellogg,* 117 Cal. 484. In the first of these cases the question was as to the burden of proof where forfeiture is claimed, and what was said related to the defendant, who disputed the validity of plaintiff's title and alleged forfeiture. Whether a defendant in such case as the present one is required to allege forfeiture before he will be permitted to prove it as a defense to plaintiff's title, is not the question here. The point decided in *Harris* v. *Kellogg* was as to the burden of proof; the rule of pleading now before us was not involved.

The Revised Statutes of the United States (sec. 2324, U. S. Comp. Stats. (1903), p. 1427) do not use the word "forfeiture." The provision is: "Upon a failure to comply with these conditions [among them to do the required annual work] the claim or mine upon which such failure occurs shall be open to relocation in the same manner as if no location of the same had ever been made." Treating this provision as in effect working a forfeiture, the courts have held that it cannot be established except upon clear and convincing proof of the former owner to have had work performed or improvements made to the amount required by the law (*Hammer* v. *Garfield M. and M. Co.,* 130 U. S. 291); and, as we have seen, the burden of proving failure to comply with statutory conditions is upon the one who asserts it. When, therefore, defendant proved his locations it was plaintiff's right to assume the burden of showing defendant's failure to do the required work, and this he was not allowed to do.

As to the Quail Quartz Mine, we can see no ground whatever for questioning the conclusions of the trial court or the findings in respect of it. So far as the East Quail location of plaintiff and his Indian Creek location conflicted with the Quail claim of defendant they were invalid. Plaintiff knew when he made his said locations that defendant had made a valid prior location of the Quail Mine, was in actual posses-

sion through the company that held a bond on the mine, and was then actively carrying forward development work, and had done work and had made improvements thereon of the value of five thousand dollars.

As to the Last Chance Mine, defendant showed a valid location in January, 1897. There was no evidence submitted by defendant, or at all, of any work done on this claim from the time the location was made to the time plaintiff made his locations of the East Quail and Indian Creek claims. The only testimony of defendant's possession of the Last Chance claim was that given by himself. When asked if he continued in possession of the Quail Mine, he replied: "Yes, sir; up to the time I gave the bond to the Quail Mining Company and since the time that I located the Last Chance, I have continued in possession of the same." Whether this was actual possession, *pedis possessio*, or only the constructive possession which follows location, does not appear. It is not disputed that plaintiff's locations were valid as to land not embraced in defendant's Last Chance location, and as to this it was valid if the land was then unoccupied mineral land and open to relocation. The position of the parties, briefly stated, was this: Defendant's claim was located in 1897; he remained in possession thenceforward and was in possession at the time of plaintiff's location in 1899, but had done no assessment work, and was not at that time engaged in doing any work thereon. Plaintiff thereupon made locations including a portion of defendant's said claim, and, so far as it appears, it was accomplished peaceably, and without disturbing defendant's possession, such as it was. Clearly defendant's location of the Last Chance could not be the source of a valid claim after the close of the year 1898, unless he had done the required assessment work by that time, or unless he had in the year 1899, before plaintiff made his locations, begun development work and prosecuted it diligently. But he did no work on his claim at any time, and it, therefore, ceased to have any validity as against a valid relocation. Defendant's counsel seem to hold the view that his possession was enough to remove the land from the category of unoccupied land, or, at least, that it was sufficient to prevent plaintiff from making a valid location. The case of *Belk* v. *Meagher*, 104 U. S. 235, is cited. We do not think that case supports or that any case can be

found supporting such contention, if that be defendant's view. Such a construction of the statute would permit a locator of mineral land to hold it against all the world for an indefinite time without doing any development work whatever.

We think the findings that defendant is the owner of the portion of the Last Chance Mine which is in conflict with plaintiff's locations is not supported by the evidence. It is not necessary to notice other points raised by the appeal.

It is advised that the judgment, so far as it affects the Quail Quartz Mine of defendant, be affirmed, and, so far as it affects defendant's right to the ground in conflict in the Last Chance Quartz Mine of defendant, it be reversed.

Harrison, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment, so far as it affects the Quail Quartz Mine of defendant, is affirmed, and, so far as it affects defendant's right to the ground in conflict in the Last Chance Quartz Mine of defendant, it is reversed.

Henshaw, J., Lorigan, J., McFarland, J.