[Civ. No. 742.    Third Appellate District.—August 9, 1910.]

## C. E. McCLEARY et al., Respondents, v. W. D. BROADDUS et al., Appellants.

MINING CLAIMS—ESSENTIALS OF MAKING AND MAINTAINING A VALID LOCATION—DISCOVERY—APPROPRIATION—DEVELOPMENT.—A general and comprehensive statement of what is required to make and maintain a valid location of a mining claim is found in the language of the supreme court of the United States, that "In all legislation, whether of Congress or of the state or territory, and by all mining regulations and rules, discovery and appropriation are recognized as the source of title to mining claims, and development by working as the condition of continued ownership until a patent is obtained."

ID.—ORDINARY MODE OF APPROPRIATION — POSTING AND RECORD OF NOTICE—MARKING OF BOUNDARIES.—Ordinarily, an appropriation of

a mining claim is effected by the posting of a notice of location at or near the point where the ledge is exposed, the record of the notice, and the marking of the boundaries of the claim.

Id.—Order of Acts Immaterial Before Adverse Claim.—It is a universal rule that the order of the acts constituting an appropriation is immaterial, when every act necessary to complete it is done before an adverse claim has accrued.

Id.—Marking of Boundaries—Main Act of Original Location.— Under section 2324 of the statutes of the United States, providing that "The location must be distinctly marked on the ground, so that its boundaries may be readily traced," the distinct marking of the boundaries is the main act of original location.

Id.—Purpose of Posted Notices—Aid in Marking Ground.—The purpose of the posted notices is that they may be an aid in determining the situs of the monuments, and therefore constitute a part of the marking of the boundaries of the ground, as does every other object placed on the ground for the purpose of marking it, or otherwise, if it in fact does help to mark it.

Id.—Credibility of Prior Locator as Witness—Prior Discovery and Marking of Boundaries—Findings—Province of Trial Court.— The credibility of the prior locator as a witness to his prior discovery of the ledge in controversy and as to his prior marking of boundaries of his claim, was for the consideration of the trial court, and where there is nothing inherently improbable in his testimony, the findings based thereon will be accepted as establishing such priority.

Id.—Prior Notice of Opposing Location—Subsequent Discovery and Marking of Boundaries.—The mere priority of the notice of location under which defendants claim cannot avail, where the assignors of plaintiffs had the prior discovery and the prior marking of boundaries, and posted their subsequent notice before the opposing claimants had marked their boundaries. In such case, the plaintiffs have the better right.

Id.—Discovery the Source of Title—Prior Right to Complete Location—Reasonable Time.—The discovery is the source of title, and vests the first discoverer with the prior right to complete his location. He could only lose this prior right to perfect his claim by a failure within a reasonable time to mark his location so that the boundaries could be traced upon the ground, and where this was done within a reasonable time, and before any effort was made to mark the boundaries of the opposing claims, the priority of the first discoverer was preserved.

Id.—Prior Posting of Notice Not a Test of Priority—Absence of Mining Customs—Construction of Federal Statutes.—In the absence of evidence of the existence of any mining custom or regulation of the district relative to the subject of a notice of location, there is nothing in the federal statutes prescribing the posting of a

notice on the day of discovery or prescribing where it shall be posted on the claim, or at all. The mining law of the United States does not require the notices of location to be posted or recorded, and it is only where the local customs and rules of the miners of the district require these steps that they are necessary.

Id.—Performance of Annual Work—Support of Finding.—It is held that the evidence amply sustains the finding that the prior locator and the plaintiffs, as his assignees, performed fully all the annual labor required under the laws of the United States to preserve their prior rights.

Id.—Quieting Title—Joinder of Plaintiffs.—The owners of three-fourths of a mining claim may bring an action to quiet their title against opposing claimants thereof, under section 738 of the Code of Civil Procedure, without being required to join the owner of the remaining one-fourth thereof as a coplaintiff. The rule is that tenants in common may, but need not, join as plaintiffs.

APPEAL from a judgment of the Superior Court of Modoc County, and from an order denying a new trial. John E. Raker, Judge.

The facts are stated in the opinion of the court.

A. F. Shartel, and James Wylie, for Appellants.

F. M. Jamison, and N. A. Cornish, for Respondents.

BURNETT, J.—The action was brought to quiet title to a certain mining claim in Modoc county, known as the "Mountain Sheep Mining Claim." The defendants contend that the land is included within their locations, known as the Evening Star, White Quartz and Klondyke mining claims, and the determination of the case involves the question of prior location and appropriation as to the respective claimants and whether up to the time of the trial plaintiffs had done everything required of them by law to maintain the validity of their claim. In reaching a conclusion ·favorable to plaintiffs, the trial court found that their grantor, C. T. Fisher, "made a discovery of a mineral-bearing ledge in place containing gold on the ground embraced within the exterior boundaries of the Mountain Sheep mining claim on the first day of August, 1905, and that thereafter on the fourth day of August, 1905, and the seventeenth day of August, 1905, the said C. T. Fisher proceeded to and did mark the exterior

boundaries of the said Mountain Sheep mining claim upon
the ground so that its boundaries could be readily traced upon
the ground, and that the marking of the exterior boundaries
of the said Mountain Sheep mining claim by the said C. T.
Fisher, following the discovery by him as aforesaid, on the
first day of August, 1905, was done within a reasonable time
after the discovery was made by him as aforesaid.  That the
discovery of the ledge of mineral-bearing quartz in place upon
said Mountain Sheep mining claim, made by the said C. T.
Fisher and his location of said Mountain Sheep mining claim,
and marking the exterior boundaries thereof so that the bound-
aries of said last-named claim could be readily traced upon
the ground, as aforesaid, was prior in time and prior in right
to the said discoveries of the mineral-bearing ledges and each
of them made by the said defendants upon the said Evening
Star, White Quartz and Klondyke mining claims, and each
of them and prior to the marking of the boundaries of the
Evening Star, White Quartz and Klondyke mining claims
and each of them.''

It is claimed that these findings are not justified by the
evidence.

The parties are substantially agreed, except possibly in one
particular, as to what steps are necessary to make and main-
tain a valid mining location.  Indeed, the proceeding has
been frequently the subject of adjudication, and concerning
it there would appear to be little room for controversy.  A
general and comprehensive statement of what is required is
found in the decision of the United States supreme court in
*Ehrhardt* v. *Boaro,* 113 U. S. 535, [5 Sup. Ct. Rep. 564],
wherein it is said: ''In all legislation, whether of Congress or
of the state or territory, and by all mining regulations and
rules, discovery and appropriation are recognized as the source
of title to mining claims, and development by working as the
condition of continued ownership until a patent is obtained.''
The only uncertainty involved in the foregoing statement is
as to the exact meaning of *appropriation.*  Ordinarily, this
is effected in the following manner, as pointed out by the
supreme court in *Dwinnell* v. *Dyer,* 145 Cal. 21, [78 Pac.
253] : ''The posting of notice at or near the point where the
ledge is exposed; next the recording of notice; next the mark-
ing of boundaries.''  But, in the language of the learned

chief justice: "It is indeed universally held that when every act necessary to complete a location has been done before an adverse claim has accrued, the order in which such acts have been performed is immaterial."

Section 2324 of the statutes of the United States [U. S. Comp. Stats. 1901, p. 1426] makes it essential that "The location must be distinctly marked on the ground so that its boundaries can be readily traced." In commenting upon this requirement the supreme court, in *Donahue* v. *Meister*, 88 Cal. 131, [22 Am. St. Rep. 283, 25 Pac. 1099], declared that it is the "main act of original location." In *Eaton* v. *Norris*, 131 Cal. 563, [63 Pac. 856], it is said that "the ultimate fact in determining the validity of a location is the placing of such marks on the ground as to identify the claim, or—to use the language of the statute—of such a character that the boundaries can be readily traced." As to the purpose of the posted notices, it is stated that they may be an aid in determining the situs of the monuments (Lindley on Mines, sec. 373), and, therefore, "constitute a part of the marking, as does every other object placed on the ground for the purpose of marking it or otherwise, if it in fact does help to mark it."

Did the said Fisher, in compliance with these requirements of the law, make a valid location of the claim in question? There is evidence in the record that he made the discovery on the first day of August, 1905. He testified as follows: "Q. What was your object and purpose in being there the first day of August? A. I was prospecting. Q. I will ask you to state what discovery you made of mineral at that time, if any? A. I found gold out of the rock, or supposed it to be gold, about the center of the claim." He further stated that "there was a quartz lead there; as near as I could trace it, it would be over half the length of the claim." It may be, as said by appellants, that "this testimony of Fisher's is as devoid of truth as cunning and malice can make it," but it is needless to add that such consideration was for the trial court. The testimony is not inherently improbable, and under the rule we must accept it as establishing the proper discovery.

Again, he testified that on the 4th of August, 1905, one Lester Bonner wrote a notice of location, and Fisher signed it and posted it on a tree on the northeast corner of the claim, and built a monument there of stone and pieces of decayed

wood about four feet high.  He went back the next day and
"put up the northwest and center monuments and then pros-
pected on the ground for quite a while.  On August 17th I
put up the northeast side center, the southeast corner, the
south or southeast end center and the southwest corner and
the southwest side center monuments of stone about three feet
high, so that the lines of the boundaries could be readily
traced from those monuments."  As to what was done on the
4th of August and subsequently Fisher is corroborated by
other witnesses.  There is evidence, then, that everything was
done by Fisher which was necessary to effect a valid loca-
tion.  There is some criticism of the fact that his notice was
not posted until the said 4th of August, and that it was placed
some distance from the point of discovery.  As to this it may
be said that there is no evidence of the existence of any min-
ing custom or regulation in the district relating to the sub-
ject, and there is nothing in the statute requiring the posting
of notice on the day of discovery or prescribing where it shall
be posted on the claim or at all.  As we have already seen,
the practice is as suggested by appellants, but the essential
things are the discovery and the "marking of the location
upon the ground, so that the boundaries may be readily
traced."  And it is conceded that the discoverer has a rea-
sonable time in which to so mark the location.

The claim of appellants, on the other hand, rests upon the
discovery and the posting of a notice on the second day of
August and the marking of the boundaries on a date subse-
quent to that of respondents.  The location notice posted by
appellants the second day of August and recorded on the first
day of September was in the following form:

### "LOCATION NOTICE.

"Notice is hereby given, that we, undersigned citizens hav-
ing complied with the laws of the United States and local
laws have located and claim 1500 feet in a northwesterly and
southeasterly direction, and 300 feet on each side of this loca-
tion monument.  This monument is the beginning point of
this claim.  This claim shall be known as the White Quartz.
Located the 22nd day of August, 1905."

It is admitted by appellants that their location notices did
not sufficiently mark the boundaries of the claim, but their

14 Cal. App.—5

contention is "that location notices are sufficient to hold mining claims for a reasonable time in which to mark the boundaries." Ordinarily, that is true, because the notice is evidence of an original discovery, or else the mining customs or rules require the posting of such notice. But here we have a prior discovery on the part of respondents and a prior marking of the boundaries. The discovery is manifestly the source of the title, and vests the discoverer with the prior right to complete his location. He could only lose this prior right to perfect his claim by a failure within a reasonable time to mark his location so that the boundaries could be traced upon the ground. But respondents not only proceeded within a reasonable time to perform this ultimate act, but before appellants made any effort to mark said boundaries.

The mistake of appellants is in the contention that the prior discovery must be accompanied by a prior posting of notice in order to vest the claimant with the prior right to complete his location. "But the mining law of the United States," as held in *Anderson* v. *Caughey,* 3 Cal. App. 26, [84 Pac. 224], "does not require the notice of location to be posted or recorded (*Carter* v. *Bacigalupi,* 83 Cal. 187, [23 Pac. 361] ; *Dwinnell* v. *Dyer,* 145 Cal. 12, [78 Pac. 247]) ; and it is only where the local customs and rules of the miners of the district require these steps that they are necessary."

It is the contention also of appellants that Fisher and his successors in interest fell short of satisfying the condition of continued ownership by reason of failure to do the improvement work required by the statute. There is testimony, though, to support the finding of the court in that respect. C. E. McCleary testified that about $2,000 worth of work was done in 1906 and $100 worth in 1907. William A. Schauers also testified that something over $100 worth was done in 1907. This places the finding of the court beyond our reach. (*Miller* v. *Scoble,* 8 Cal. App. 344, [97 Pac. 93].)

We think there is no merit in the contention that the demurrer to the complaint should have been sustained on the ground of the nonjoinder of the owner of the other one-fourth of the mine, the plaintiffs claiming to own only three-fourths. Section 738 of the Code of Civil Procedure authorizes the owner of any interest in real property to bring an action to quiet his title against anyone claiming adversely to him. He

is not required to join the owner of any other interest in the suit. The rule is that tenants in common may, but need not, join as plaintiffs. (17 Ency. of Pl. & Pr., p. 319.)

We have endeavored to consider fully but without unnecessary elaboration all the points made in the interesting brief of appellants, but we can see no reason to interfere with the conclusion of the learned trial judge, and the judgment and the order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 7, 1910.