[Civ. No. 2379. Fourth Appellate District.—June 24, 1940.]

BLANCHE C. CRANE, Respondent, v. NORMAN C. FRENCH et al., Appellants.

Herndon J. Norris and Robert E. Rosskopf for Appellants.

Rorick & Cottingham for Respondent.

BARNARD, P. J.—This in an appeal by the defendants from a judgment quieting the plaintiff's title in and to a certain mining claim in San Diego County known as the "Stewart Mine".

This claim, formerly the property of a Maine corporation known as American Lithia & Chemical Co., which will be hereafter referred to as the corporation, was originally located in 1898. Although it was worked for many years and much ore was removed it was not patented. On August 4, and August 6, 1931, the appellants attempted to locate the same property, filing two notices of location. At that time there were extensive mine workings, ore bins filled with ore, dump cars and tracks, buildings, equipment and supplies on the property, belonging to the corporation. Thereafter, the appellants were on the property at various times, made repairs to the road, posted signs and attempted to keep other people off the property, and in succeeding years filed proofs of labor or notices of intention to take advantage of moratorium stat-

utes excusing such requirements. They conducted no actual mining operations, but sold some of the ore which they found in the bins. It may be here observed that certain lands, including the land in question, were withdrawn from entry in 1903, subject to rights then existing by the federal government.

The respondent, who was a stockholder in the corporation, learned that the appellants had attempted to file on this claim, and so informed the corporation. An attorney was employed who advised that the claims of the appellants were invalid. The respondent was assured that necessary steps would be taken to protect the interest of the stockholders of, the corporation. In January, 1933, a proceeding was brought in the courts of Maine for the dissolution of the corporation, resulting in a decree dated March 21, 1933, reading: "Said corporation be and it hereby is dissolved." The respondent did not learn of this dissolution of the corporation until July 3, 1934. In the meantime, on June 26, 1934, she had filed a notice of intention to hold the mining claim, under the moratorium statute, which notice she had signed "American Lithia & Chemical Co., Per Blanche C. Crane, Agent". She visited the mine from time to time and erected signs which were maintained during 1934 and 1935, except when they were torn down by the appellants.

When she learned that the corporation had been dissolved the respondent opened negotiations with its former officers for the purpose of securing a conveyance of the corporation's title to the mining claim. She obtained a deed, which was executed on March 15, 1935, by the four individuals who were the former officers and a majority of the directors of the dissolved corporation. In April, 1935, she placed a man upon the property, furnished with supplies, with instructions to protect the mining equipment and ore bins and to keep off other parties. At that time the appellants were not on the property and had not been for nine months. The appellants appeared some two weeks later and evicted this man from the property, although they knew he was holding possession for the respondent. In September, 1935, the respondent had the property surveyed, made application for a patent and posted notice of this application on the premises, which notice was maintained for much more than the statutory period. She filed the necessary notices of intention to hold under the mora-

torium acts or the necessary notices of labor, and from time to time erected notices on the property that she was the owner of the claim, which notices were torn down by the appellants. The appellants admitted at all times that they knew of the claims of the respondent.

The appellants opposed the respondent's application for a patent and the Land Department ordered that no patent issue until the adverse claims were settled by court decree. On August 6, 1936, these appellants brought an action to quiet their title to this mining claim as against this respondent. In that action the court expressly refrained from making any finding with respect to whether this respondent had or had not any right in the mining claim in question, but found that up to August 6, 1931, the corporation was the owner of the claim, had complied with all requirements of law with respect to holding the same, and had not abandoned nor intended to abandon the claim. It was further found that these appellants had no interest in the claim either as locators or through adverse possession, and judgment was rendered against them which has become final.

The oral decision in that case was given on March 17, 1937. The next day the appellants went upon the property and filed a new purported notice of location. Their motion for a new trial in that case was denied on May 7, 1937, and on May 29, 1937, the respondent took possession of the property through her brother, who has remained there since that time. The present action was filed by the respondent on December 17, 1937. The court found in all respects in her favor and this appeal followed the judgment.

 It is first contended that the appellants have acquired title to this claim by adverse possession and that the findings to the contrary are not supported by the evidence. It is clear that any rights of the appellants to the property must depend upon adverse possession since their several locations are all invalid, the land having been withdrawn from entry in 1903 and never having been restored. The former action was begun more than five years after the appellants entered upon and attempted to locate the property in 1931, and the court's finding in that action that they had not had continuous possession of said claim for a period of five years prior to the commencement of the action could mean only that it was found that their possession had been interrupted at some

time during that period. In the present action there is evidence that a representative of the respondent was in possession of the premises for some two weeks in April, 1935, and that the appellants had then not been on the place for a period of nine months. There is also evidence that the brother of the respondent was in possession of the place from May 29, 1937, continuously down to the trial of the action. He testified that the appellants were not there when he took possession, but stated: "Then they would come up occasionally and stay two or three days and pick around there a little and do a little work and were gone again. Then maybe I wouldn't see them for two or three weeks. Then maybe they would drop in again and stay for a day or two. And they kept that up for pretty near a year now." The appellants knew that this man was in possession of the property and that he was holding it for the respondent. While there are some conflicts, the evidence supports the court's finding that there was no continuous or adverse possession on the part of the appellants during any period of five years.

The appellants contend that the respondent's action is barred by the statute of limitations under the provisions of section 318, 319 and 320 of the Code of Civil Procedure. Section 318 has no application where an action to quiet title is brought by an owner who is in actual possession of the property. (*Faria* v. *Bettencourt*, 100 Cal. App. 49 [279 Pac. 679].) This section is to be considered with the code sections relating to adverse possession (16 Cal. Jur. 434). The respondent had a deed which purported to convey to her the rights which had been held by the corporation, and she was also in possession of the property within five years before the action was filed. Section 319 does not apply to actions for the recovery of real property, but applies only to actions for rent or damage to real property, or the like. (*Hagely* v. *Hagely*, 68 Cal. 348 [9 Pac. 305].) The appellants construe section 320 as meaning that any entry upon real estate, however rightful, is ineffectual to toll the statute of limitations or to interfere with another's adverse possession unless a suit is brought within the prescribed time. No cases are cited in this state which have so held. To thus construe this statute would directly conflict with other cases in which it has been held that no title by adverse possession can be established if such possession has been broken by the entry of the

owner within the five-year period. In any event, this section would not bar the respondent since she took possession in May, 1937, and began this action about six months later, and since she brought the action within five years after her right to make the entry accrued, whether that was when she obtained the deed in 1935 or when she learned of the dissolution of the corporation and took steps to protect her interest in the property in 1934. The court correctly found that respondent's cause of action was not barred by the code sections referred to or by any other statute of limitations.

██ Relying on the well-known rule that a plaintiff in a quiet title action must recover on the strength of his own title rather than upon any lack of title in his adversary, the appellants contend that the respondent has established no title in herself to the mining claim in question. It is contended that the deed which she obtained was insufficient to convey to her any right or title which the corporation may have had. This deed recites that it is made by four named persons "as trustees in the liquidation of the American Lithia & Chemical Company" as grantors, and to the respondent as grantee. After reciting that the grantors were at the time of dissolution the directors of the corporation and that as such they became trustees in liquidation, the deed recites that, in consideration of $10 paid to them "and additional mutual and valuable considerations", the grantors grant, sell, release, convey, assign and quitclaim to the grantee all the right, title and interest which they as said trustees have in and to the mining claim in question. The deed is signed by the four individuals "as trustees in liquidation for the American Lithia & Chemical Company". Each of the four persons signing the deed acknowledged the same individually and there is no corporate acknowledgment.

It is argued that this was not a deed from the corporation itself, that in the dissolution proceeding no receiver or trustees were appointed by the court, that the four former directors who signed the deed had no authority to act for the dissolved corporation, and that the deed was, therefore, ineffective for any purpose. Reliance is placed upon two Maine statutes, the first of which provides that the court may dissolve a corporation without the appointment of trustees or receivers, upon proof that there are no existing assets requiring distribution among the stockholders, and the second of

which provides that the courts have jurisdiction to appoint receivers and shall, upon dissolving a corporation, appoint one or more trustees who shall have general powers as well as any special powers given them by the court. (Rev. Stats. Me. 1930, chap. 56, secs. 90, 91.)

Although the petition for the dissolution of this corporation contained a statement that it had no assets requiring distribution among the stockholders, no finding to that effect was made and the decree recited merely "that said corporation be and it hereby is dissolved". Another section of the Maine statutes provides: "Corporations, whose charters expire or are otherwise terminated, have a corporate existence for three years thereafter"; for the purpose of doing certain designated things, including "to dispose of their property". In *Carter, Carter & Meigs Co.* v. *Stewart Drug Co.*, 115 Me. 289 [98 Atl. 809], it was held that this statute has no application where the court appoints trustees or receivers for a dissolved corporation, but that where no such trustees or receivers have been appointed "the corporation and its officers may do all things authorized by that section necessary to wind up its affairs".

In the instant case, therefore, the corporation and its officers had authority during the three-year period to dispose of any property which belonged to the corporation. The deed in question was delivered within that time. While the officers and directors of such a dissolved corporation are not referred to in the statutes as trustees in liquidation, in a very practical sense that is what they are during the three-year period. The Maine statutes are not very clear in defining the procedure to be followed by such officers of a corporation which has already been judicially declared to be dissolved, without the appointment of trustees. It is apparent, however, that the officers and directors are the persons who are authorized to act for the corporation in disposing of its property. The persons who signed this deed had been the officers of the corporation at the time it was dissolved and also constituted a majority of its board of directors. The consideration for this deed is not here attacked and, as far as our attention is called to the record, the consideration paid by this respondent may have been considerable and entirely adequate. Clearly, the persons signing this deed were the ones authorized to dispose of this property. It is equally clear that they intended and at-

tempted to do so. The only question is as to whether the form in which they did it was sufficient. Perhaps the corporation still had an actual existence and these same officers should have given the deed in the name of the corporation, signing and acknowledging it as officers thereof. Whether or not legal forms were properly observed in the execution of the deed, it would not appear that there was a complete failure to pass any right or title to the respondent under equitable rules, and the Maine statutes.

A further consideration is that the property in question is an interest in land which is situated in this state. In coming into this state the stockholders of a corporation impliedly accept the laws of this state with respect to property here or business done here. (*Williams* v. *Gold Hill Min. Co.*, 96 Fed. 454.) Section 401 of our Civil Code provides that in case of a dissolution of a corporation the board of directors shall continue to act "as a board" with full powers to wind up and settle its affairs. It further provides that any act authorized or approved by a majority of the directors acting as a board shall be valid and binding, as though authorized and consented to by all of the directors. Our laws formerly provided that the directors of a dissolved corporation should act as trustees in the liquidation of the affairs of a corporation. While they are no longer spoken of as trustees in liquidation, the directors still have about the same powers. In stating, in the deed here in question, that they were acting as trustees in liquidation of the dissolved corporation, the majority of the directors sufficiently showed that they were acting as a board and not individually. The fact that they acknowledged the instrument individually does not affect that situation. Under our laws, the majority of the directors had authority to dispose of the assets of the corporation, and this they attempted to do.

Both under the laws of this state and of Maine it must be held that the deed thus executed conveyed some interest in this property to the respondent. Even if it was insufficient, in law, as a conveyance of the legal title to such rights as the corporation owned in and to this claim, it was effective at least to the extent of giving the respondent an equitable title thereto.

A further consideration is that if no interest in this land was conveyed to the respondent by this deed, any interest owned by the corporation would still be held by the stock-

holders as tenants in common. The respondent was one of those stockholders, and apparently was the only one who took any interest in protecting the title to this claim. Over a period of years she made every effort to protect her interest and to preserve her title to the property, endeavoring to keep possession, filing notices under the moratorium act, keeping men on the place to guard the ore and equipment, and bringing and defending actions. In *Miller* v. *Chrisman*, 140 Cal. 440 [73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63], the court said:

"It is to be borne in mind that a location such as this, though it contains one hundred and sixty acres, is still a single location, a single claim, with undivided interests, covering the whole of it. Any work done upon the claim is done for the benefit of all the co-locators. It is undisputed that when the location has once been perfected one of the associates may by conveyance acquire all of the rights of his fellows, and we can perceive no reason why the right to prosecute the work and perfect such a location by discovery may not itself be vested in a single one of them. If, instead of conveying, the seven associates had stood idle and refused to contribute their share to the necessary work of developing, and Miller under these circumstances had alone prosecuted the work to a successful discovery, no one could contend in the face of section 2324 of the Revised Statutes of the United States, but that Miller would have acquired the rights of all, and would have had a perfected location covering the whole one hundred and sixty acres. If, then, by their abandonment, without a conveyance, Miller would have acquired the right to prosecute the work and perfect the whole location for himself individually, it is impossible to see why a conveyance to him of their right, instead of an abandonment of it by a refusal to join in the work, should effectuate any different result."

In *McCleary* v. *Broaddus*, 14 Cal. App. 60 [111 Pac. 125], the court said: "Section 738 of the Code of Civil Procedure authorizes the owner of any interest in real property to bring an action to quiet his title against anyone claiming adversely to him. He is not required to join the owner of any other interest in the suit. The rule is that tenants in common may, but need not, join as plaintiffs."

Without going into the tenant in common theory in detail we think it must be held, in this connection alone, that the respondent has established a real interest in the property in

question. The court found that all the stockholders of this corporation have acquiesced in and ratified the deed of conveyance given to the respondent by the former officers of the corporation and that all of the stockholders other than the respondent have relinquished and abandoned all right, title and interest in and to said mining claim to her, that she at all times since the dissolution of the corporation has been an owner as tenant in common of said mining claim, that she has never abandoned nor relinquished the same, and that by reason of said conveyance and said abandonment and relinquishment and ratification she has become the sole owner of said claim. These findings are sufficiently supported by the evidence and are sufficient to sustain the judgment in the absence of other rules of law which would prevent such a result.

While a plaintiff in a quiet title action must prevail, if at all, upon the strength of his own title, a perfect record title is not always essential. In *Dement* v. *Pierce*, 122 Cal. App. 254 [9 Pac. (2d) 884], it is said: ''It is true, as appellant points out, that an action to quiet title cannot be maintained by the owner of an equitable interest against the owner of the *legal title*. (*Chase* v. *Cameron*, 133 Cal. 231 [65 Pac. 460].) But here the situation is different, in that the equitable owner is seeking to have his interest declared paramount to that of a holder of an equitable claim (i. e., a lien) against the property.'' In *Martin* v. *Bartmus*, 189 Cal. 87 [207 Pac. 550], we find: ''It has been repeatedly held by this court that a person who is in the course of acquiring title to government land may maintain an action to quiet title or in ejectment, the same as against other parties to whose claims of title her equities are superior.'' In *Goldberg* v. *Bruschi*, 146 Cal. 708 [81 Pac. 23], the court said: ''When plaintiff made his proof, as he did, of citizenship, and that he had made a discovery of gold-bearing quartz in the land and had shown a location according to the requirements of the law, he established his case *prima facie*. . . . The burden was then put upon the defendant to show that the location under which he claimed title was prior in time and superior in right.''

The deed here in question came from persons who were authorized to issue it for the corporation and who intended to thereby convey to the respondent the interest then possessed by the corporation in this mining claim. In an action against the corporation, a court of equity could have

cured any defects in the form of the conveyance and protected the respondent in the rights intended to be conveyed to her. The consideration is not attacked and neither the corporation nor any stockholder is objecting to the conveyance thus made. This should be conclusive in the absence of any such objection and as against outsiders who have no interest in the property and who are not in a position to acquire any such interest. The claimed deficiencies in the conveyance are as to its form only, and they in no way indicate either a lack of power to convey or a lack of intent to convey the interest held by the dissolved corporation. It would be unreasonable, under the circumstances, to hold that the respondent has shown no title in herself and that, upon that ground, the appellants, with no right in the property, can defeat her equitable title and prevent a court of equity from giving her relief and curing the existing technical defects in the form and manner in which the interest of the corporation was conveyed. ▮▮▮ The only title which it was necessary for the respondent to here show in herself was the right to apply for a patent or to continue operations to that end. Her showing in that regard was sufficient to enable her to maintain the action and recover as against the appellants.

▮▮▮ It is further argued that the respondent failed to show title in herself for the reason that all her rights, as well as those of the corporation, were forfeited by the failure to do the necessary assessment work or to file notices of intention to hold under the moratorium statutes, and also because the corporation had abandoned the property and thereafter had no right which could be conveyed.

With respect to the matter of forfeiture there is evidence of the doing of the necessary work or the filing of notices of intention to hold for each year material here with the exception of the year ending July 1, 1933. However, the statute (sec. 28, title 30, U. S. C. A.) provides that upon the failure to comply with such conditions the claim shall be open to relocation only if the original locators, their assigns or representatives, have not resumed work upon the claim before such a relocation is made. Not only was there a moratorium statute in effect in 1933, but the appellants could make no valid relocation of the claim since the land had been withdrawn from entry. Moreover, it was established in the former action between these parties that the appellants' relocation in 1931 was invalid, and before they attempted to relocate the

property in 1937 the respondent resumed work by placing a man on the property to protect the buildings, equipment and the ore which was stored there. This was a sufficient resumption of work to prevent a forfeiture. (*Clarke* v. *Mallory,* 22 Cal. App. (2d) 55 [70 Pac. (2d) 664]; *Belcher Con. G. M. Co.* v. *Deferrari,* 62 Cal. 160; *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100 [45 Pac. 1047].) ■ The question of whether there has been a sufficient resumption of work to prevent a forfeiture in such a case is a question of fact for the trial court. (*Peachy* v. *Frisco Gold Mines Co.,* 204 Fed. 659.) The court expressly found that work had been resumed by the respondent and this finding is sufficiently sustained by the evidence.

■ The matter of the abandonment of a mining location depends largely on the intention of the locator. (*Taylor* v. *Middleton,* 67 Cal. 656 [8 Pac. 594].) Abandonment takes place whenever the locator leaves the claim without any intention of holding it and regardless of who may appropriate it. (*Bell* v. *Bed Rock T. & M. Co.,* 36 Cal. 214.) ■ Mere absence from the claim, even for a period of five years, does not operate as an abandonment in the absence of proof of an intent to abandon. (*Judson* v. *Malloy,* 40 Cal. 299.) The intent to abandon must be established, and this by clear proof. (*Clarke* v. *Mallory, supra.*) The court here found that there was no intent to abandon the claim either on the part of the respondent or of the corporation. It was found in the former action that the corporation had not abandoned the claim on August 6, 1931, when these appellants first attempted to relocate it. There is evidence that during 1932 the corporation was consulting lawyers and trying to take steps to contest the attempted location which had been made by these appellants in 1931, but that these efforts were hampered by the lack of finances. The respondent consistently opposed the claims of the appellants, and when she discovered that the corporation had been dissolved, secured a deed, took possession of the property, resumed work, and defended and brought actions in court. ■ The only evidence justifying an inference that the corporation had abandoned the claim arises from the fact that the corporation was dissolved. The dissolution decree, however, did not state that there were no assets or that this claim was abandoned. We are not told that there was a resolution of the board of directors declaring that this claim was abandoned, either in connection with the

dissolution proceeding or otherwise. If there was such a resolution it would not be binding upon the stockholders without their consent. An officer of the corporation testified that a letter was sent to the stockholders, telling them of the intention to dissolve the corporation. Such a letter was not received by the respondent, and it is not even claimed that it informed the stockholders of an intention to abandon this claim. The directors of a corporation have no authority to give away the property of a corporation, and have no more authority to abandon such a claim as this, without the consent of the stockholders. For this reason it has been held that a stockholder has a right to perform the necessary work where the same is not done by the corporation. (*Musser* v. *Fitting,* 26 Cal. App. 746 [148 Pac. 536]; *Wailes* v. *Davies,* 158 Fed. 667.) Section 28, title 30, U. S. C. A., expressly recognizes the rights of co-owners of a mining claim to do the assessment work or to take the necessary steps to preserve the title. When one such co-owner abandons his interest it is not an abandonment of the entire claim but merely passes his interest to the other co-tenants. (40 C. J. 842; *Worthen* v. *Sidway,* 72 Ark. 215 [79 S. W. 777].) Not only did the respondent never abandon her interest as a co-owner in this claim but there is no direct evidence of an intent, on the part of the corporation, to abandon the claim. While the corporation was dissolved it had a continued existence for three years for the purpose of disposing of its property, and within that time its officers and directors, for a valuable consideration, conveyed the claim to the respondent. That action in itself is some evidence of the absence of an intention to abandon the claim. Under the circumstances appearing it cannot be held that the court's finding, with reference to abandonment, is without support in the evidence.

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.