## PEACHY v. FRISCO GOLD MINES CO.

### (District Court, D. Arizona. April 12, 1913.)

### No. 87.

1. MINES AND MINERALS (§ 24*)—LOCATION—"ABANDONMENT."

The term "abandonment," as used in mining law, includes both the intention to abandon and the act by which the abandonment is carried into effect. There must be a concurrence of intention to abandon and actual relinquishment of the property, so that it may be appropriated by the next comer.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 60; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 1, pp. 4–13; vol. 8, p. 7559.]

2. MINES AND MINERALS (§ 26*)—CLAIMS—ABANDONMENT—RELOCATION.

Plaintiff in ejectment to recover certain unpatented mining claims alleged that defendant's predecessors in 1907 conspired to do no work for that year and to relocate the claims as abandoned; that they agreed to abandon the same on December 31, 1907, and on January 1, 1908, relocated them, plaintiff claiming that after such abandonment defendant's predecessors were incompetent to lawfully relocate them. Defendant's answer alleged that its predecessors in title, in preparing the notices of relocation, had not been advised and did not know of a change in the state law by which it was no longer necessary in cases of relocation to state the land located was abandoned ground; that they, without any intention of abandoning the claims, inserted such statement in their notices, believing it to be necessary to make a valid relocation, and for no other reason, but they did not then or thereafter or ever abandon the claims or intend to abandon them or any part thereof; and that between January and March, 1908, they caused to be sunk on the ground embraced within the claims a shaft of specified dimensions which disclosed mineral-bearing rock, and that this was sufficient to save the claims for forfeiture for failure to perform the assessment work for 1907, as provided by Civ. Code Arizona 1901, par. 3241, as amended by Act March 12, 1907 (Laws 1907, c. 22), without reference to the question of abandonment. *Held*, that the declaration of abandonment inserted in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the notices of relocation, under the allegations in the answer, was insufficient to show as a matter of law that the claims had been in fact abandoned.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 61–63; Dec. Dig. § 26.*]

3. JUDGMENT (§ 949*)—CONCLUSIVENESS—BAR.

Where a former judgment is pleaded as a bar, it is essential that it be alleged, not only that the issues were the same, but it must also be alleged that the cause of action was the same; but, where a judgment is only pleaded as res judicata of certain issues previously determined, it is sufficient that the pleading allege that the issues were the same.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1794, 1795–1803; Dec. Dig. § 949.*]

4. JUDGMENT (§ 720*)—RES JUDICATA—ISSUES.

A fact or question which was actually and directly in issue in a former suit, and was there judicially passed on and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same or any other court of the same jurisdiction on the same or a different cause of action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. § 720.*]

At Law. Ejectment by Fred S. Peachy against the Frisco Gold Mines Company. On motion by plaintiff for judgment on the pleadings, and in the event the motion is denied, then to strike out paragraph 13 of the defendant's answer, pleading a state court judgment in a case between plaintiff and defendant's predecessors in interest (Peachy v. Gaddis [Ariz.] 127 Pac. 139) as res judicata of certain issues raised in the present action. Motion denied.

William M. Seabury, of Phœnix, Ariz., for plaintiff.

E. S. Clark, of Prescott, Ariz., and Walter Bennett and Kibbey, Bennett & Bennett, all of Phœnix, Ariz., for defendant.

MORROW, Circuit Judge. The action is in ejectment to recover possession of certain unpatented mining claims in the San Francisco mining district, in Mohave county, in this state.

1. It is conceded by the plaintiff that on December 31, 1907, one D. M. Gaddis and W. E. Sauls, the defendant's predecessors in interest, were the undisputed owners and in possession of the claims in controversy under valid locations, but it is alleged, in substance, in the bill of complaint that during the year 1907 Gaddis and Sauls conspired and agreed together to do no work and perform no labor upon or for the benefit of said mining claims or any of them for and during the year 1907, but, instead of performing the work and labor required upon said claims for said year, they conspired and agreed together to abandon the same, and each of them, on December 31, 1907, and on January 1, 1908, to relocate each and every one of said claims, and thereafter, under and by virtue of their said pretended relocations of January 1, 1908, and not under and by virtue of the former titles to said claims and of each of them, owned by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said Gaddis and Sauls, to hold the ground and premises embraced within said mining claims, and each of them, to the exclusion of all other citizens of the United States who might lawfully enter upon and develop the same; that pursuant to said agreement and conspiracy between Gaddis and Sauls they performed no labor and made no improvements upon the said claims, nor did they cause the same to be done during the year ending December 31, 1907, as required by section 2324 of the Revised Statutes; that at no time thereafter did they, or their successors in interest, resume work upon said claims as required by said section; that they abandoned said claims on December 31, 1907, and surrendered all right, title, and interest in and to said claims. It is alleged, further, that thereupon said claims reverted to the ownership of the government of the United States and became a part of the public domain, open to entry as lode mining claims by any qualified citizen of the United States, *save and except said Gaddis and Sauls, each of whom, by reason of his abandonment of said claims, became disqualified and incompetent to lawfully relocate said claims or any part thereof;* that notwithstanding such disqualification Gaddis and Sauls assumed to relocate each of said mining claims on January 1, 1908, by adopting the former boundaries of the claims, together with the then existing discovery of mineral in place upon each of said claims, and the discovery shaft upon each of said claims, but applying to each of said claims a different name from that previously applied to each of them; that about March 12, 1908, Gaddis and Sauls recorded the relocation notice of each of said claims in the office of the county recorder of Mohave county; that in each of said notices the said Gaddis and Sauls declared and stated that they had relocated each of said claims as abandoned ground; that thereafter, through various mesne conveyances, the defendant became the successor in interest of said Gaddis and Sauls; that on September 27, 1910, the plaintiff peaceably and openly entered into and upon a part of said premises and located the same by erecting thereon three certain location notices, and by making on each of said claims a discovery of mineral in place, and by sinking upon each of said claims a discovery shaft at the point and place of discovery; that the plaintiff then and there began the erection and construction upon each of said claims of his discovery monuments, and that he placed in each of said discovery monuments notices of location; that said notices and each of them were duly posted at the discovery point and points of each of said claims, and that at said points there then was, and still is, a well-defined vein or crevice in rock and place carrying gold and other precious metals; that the plaintiff thereupon began the work of perfecting the locations by measuring the boundaries of said claims and by placing monuments thereon, as required by the statute, but that while so engaged the agents and representatives of one Joshua R. Clair, who on August 12, 1909, obtained from Gaddis and Sauls an option to purchase said claims, and afterwards became the successor in interest of Gaddis and Sauls, and the predecessor in interest of the defendant, and who was then in possession of the premises adjacent to the claims in con-

troversy, with force and arms prevented the plaintiff from continuing the completion of his said locations, or any of them, demolished one of plaintiff's location monuments erected by him, and by threats of violence and physical injury against the plaintiff drove, expelled, and ousted the plaintiff and his assistant from said premises.

It is further alleged by the plaintiff that for the protection and preservation of his rights in the premises, he instituted a suit in equity on December 10, 1910, in the then territorial court of the Fourth judicial district of the territory of Arizona, to quiet his title to said mining claims; that a general demurrer based upon the ground that plaintiff's complaint failed to state facts sufficient to constitute a cause of action was interposed by the defendant, and sustained by the court; that a judgment was entered thereon dismissing the plaintiff's complaint upon such ground, and thereafter, on or about September 28, 1912, the said judgment was affirmed by the Supreme Court of the state of Arizona, which said judgment of affirmance became final on November 8, 1912, at which time said Supreme Court denied plaintiff's application for a rehearing of said cause. But plaintiff alleges that the complaint herein is wholly and materially different from his complaint in said action in the state court, and supplies each and all of the defects and deficiencies contained in the former complaint.

Plaintiff further alleges that during the month of October, 1911, he first learned that early in September, 1911, the predecessors in interest of the defendant had so far proceeded with the construction of a mill upon the said premises that the defendant was able to operate the same and reduce the ores contained in said premises, and to extract therefrom the gold and other precious metals contained therein; that said mill has a capacity of 40 tons of ore every 24 hours; that it is the intent and purpose of the defendant to continue the operation of said mill and to increase its capacity, thereby depleating, destroying, and exhausting plaintiff's property and estate in said premises; that the defendant is now converting the product of the ores so reduced as aforesaid to its own use and benefit. It is further alleged that, under an order of court, the defendant was restrained from interfering with the plaintiff in the completion of his location of the claims in controversy, and under this order plaintiff was permitted to perform the work and improvements required by the statute for the year 1911.

The relief demanded by the plaintiff is the recovery of possession of the premises; that the defendant be ejected from the possession and occupation of the premises; that the plaintiff recover damages for the use and occupation thereof, and for the value of the ores and precious metals extracted from said premises by the defendant.

The defendant in its answer denies specifically the charge made in the complaint, that Gaddis and Sauls conspired together and agreed and determined between themselves not to do or perform any work or labor upon or for the benefit of said mining claims, or any of them, during the year 1907; denies that they conspired together and agreed and determined between themselves to abandon said claims or any

of them on December 31, 1907, or at any other time, or to relocate the said claims, and to hold the ground and premises embraced within said mining claims under such relocation; denies that pursuant to such agreement between Gaddis and Sauls they did not do or cause to be done or performed any labor or work or improvement upon said claims for the benefit of said claims; denies that at no time after January 1, 1908, the said Gaddis and Sauls resumed work on said claims; denies that pursuant to any agreement or conspiracy they did on December 31, 1907, or at any other time, or at all, abandon said claims or any or either of them, or surrender the right, title, and interest in said claims; denies that said claims on the 1st day of January, 1908, or at any other time, reverted to the unqualified ownership of the government of the United States, and became part and parcel of the unappropriated public domain, open to entry by any qualified citizen of the United States.

The defendant admits that Gaddis and Sauls did attempt to relocate each of said claims, and the ground embraced in the exterior boundaries thereof, under certain names set forth in the answer; but denies that in making said locations said Gaddis and Sauls adopted the discovery shaft upon each of said claims, and the location work theretofore done and performed upon each of said claims; denies that said Gaddis and Sauls did not cause to be done upon the ground embraced within said locations the amount of work required by law to be done and performed upon mining locations to constitute a valid location thereof; admits the recording of notices by Gaddis and Sauls as alleged in the complaint.

The defendant alleges that between the 1st day of January, 1908, and the 12th day of March, 1908, Gaddis and Sauls caused to be sunk upon the ground embraced within each of said claims a shaft 4 feet wide by 6 feet long, with a depth of at least 10 feet below the lowest part of the rim at the surface, each of which shafts disclosed at the bottom mineral in place carrying gold, silver, and other precious metals, except that on one of the claims the tunnel then existing thereon was between said last-mentioned dates driven for a distance of at least 10 feet further than the same existed on the 1st day of January, 1908, and that the tunnel disclosed on its face mineral in place carrying gold, silver, and other precious metals. The defendant further alleges that during the months of February and March, 1909, Gaddis and Sauls performed and caused to be performed upon the ground embraced within the boundaries of said claims, and another claim contiguous thereto, but in the same group, and for the development and benefit of all of said claims, work, labor, and improvements of the value of at least $300, and thereafter, during the months of August, September, October, November, and December of said year Gaddis and Sauls performed and caused to be performed work and labor upon said claims, and upon another claim contiguous thereto, all of which claims were improved, developed, and benefited thereby, work, labor, and improvements of the value of $5,000. Defendant further alleges that during the year 1910, and prior to the 28th day of September of that year, Gaddis and Sauls expended and caused to be expended upon the

ground embraced within the boundaries of said claims, and another claim in said group contiguous thereto, the sum of $70,000 in the development, opening, and improvement of the ground embraced within the boundaries of said mining claims, and for the benefit thereof, and at least $15,000 of said sum was expended upon said claims in the development of each and every one of them in mining exploration and in the extraction of ores and metals therefrom; that the balance of said sum was expended for the construction of a mill, and the installation of the machinery, appliances, and apparatus therewith connected, for the treatment, reduction, and milling of the ores and minerals contained in the ground embraced within the boundaries of said mining claims. The defendant admits the transfer of title as alleged in the complaint under which the defendant has become the successor in interest of Gaddis and Sauls in said mining ground.

The defendant denies that on September 27, 1910, or at any other time, the plaintiff made any valid location of any part of the ground embraced within the boundaries of the claims mentioned and described in the complaint, but alleges the facts to be that on the 28th day of September, 1910, and while the predecessors in interest of the defendant were in the actual, peaceable, and undisputed possession of said claims, and each of them, and all of the ground embraced therein, and while the predecessors in interest of the defendant were expending and causing to be expended the sums of money mentioned in the answer, and preparing to expend other and much greater sums of money in the development and improvement of said claims, and engaged in good faith in holding, developing and working said claims, and each of them, the plaintiff unlawfully, wrongfully, and in violation of equity, morals, and good conscience entered upon said claims as a trespasser, in violation of the equities and rights of the predecessors in interest of the defendant, and pretended and attempted to locate a part of the said premises by erecting thereon three certain location notices, but that said plaintiff did not perform, nor undertake in good faith, or with due diligence, to perform, and has not yet performed, any other act of location required by law within the time limited or at any other time.

The defendant admits that prior to September, 1911, and on or before the 28th day of September, 1910, the predecessors in interest of the defendant, at an expense exceeding $50,000, constructed a mill upon the premises embraced within the boundaries of said claims; that ever since said date the defendants and its predecessors in interest have been in the sole and exclusive possession of said premises and of the whole thereof, and have been extracting from the ores contained within the boundaries of said mining claims gold and other precious metals contained therein; admits that it is the purpose of the defendant to continue to operate said mill and to take out the ores containing precious metals upon said mining claims, and to extract the precious metals therefrom. The defendant admits that on or about December 23, 1911, one of the justices of the Supreme Court of the territory of Arizona granted the plaintiff in a suit then pending in the Supreme Court of the territory of Arizona the right to perform the annual as-

sessment work and labor upon the ground embraced within his alleged locations thereof; but denies that the plaintiff pursuant to said order or at all has ever performed any work or labor upon said premises amounting to the sum of $300, or any other sum. The defendant admits that it is now in the exclusive occupation of the whole of the premises so located by Gaddis and Sauls.

The defendant alleges that on September 28, 1910, the predecessors in interest of the defendant were, and theretofore had been, in the actual, exclusive, and undisputed possession of all the ground embraced within the mining claims so located by the said Gaddis and Sauls and each of them, by whatever names said claims have been known or called, since November, 1903; that they have paid all taxes lawfully levied thereon. The defendant denies that the said mining locations and the ground embraced therein, or any or either of them, have ever been forfeited or abandoned by the predecessors in interest of the defendant; denies that the plaintiff has ever acquired or now has any right, title, or interest, or any right to the possession of any portion of said mining claims embraced within the boundaries thereof or any part thereof. The defendant alleges that Gaddis and Sauls during the year 1907 were informed and believed that the Congress of the United States had enacted or was about to enact a law exempting all mining claims from assessment work or annual labor during that year; that, relying in good faith upon such information and belief, the said Gaddis and Sauls did not perform such annual labor or assessment work upon said claims; that, when they discovered that no such law had in fact been passed by Congress, they had no time within which to do such work within said year, and in good faith, and because of having been misled and misinformed as aforesaid, they believed it necessary to relocate said claims, neither of said parties then knowing that a resumption of work upon said claims before the intervention of adverse rights would secure and preserve to them their said claims; that in preparing notices of relocation said Gaddis and Sauls had not been advised and did not know that the Legislative Assembly of Arizona of 1907 had amended the law relative to the relocation of mining claims that it was no longer necessary to state that the same was located as abandoned ground, and therefore said parties and each of them, without any intention of abandoning said claims or the ground embraced therein, or any part thereof, believed it to be necessary to state in said location notices, and for that reason and no other they did state therein, that the said claims were relocated as abandoned ground, but the defendant alleges that said Gaddis and Sauls did not then, or thereafter, or ever, abandon said claims, or intend to abandon the same or any part thereof, but that they continued from the 1st day of January, 1908, as before, in the possession, enjoyment, and development of said claims, and since said 1st day of January, 1908, and prior to the attempted location thereof by plaintiff, they had done and caused to be done upon said claims many times the amount of assessment work required to be done in the year 1907, and for each and every year subsequent thereto.

The defendant admits the bringing of the suit mentioned in the complaint, and alleges that in said cause the issues were identically the

same as the issues in this case; that a judgment was duly made and entered therein in favor of the defendants and against the plaintiff therein, dismissing the plaintiff's said bill of complaint upon the merits; that the plaintiff thereupon took an appeal from said judgment to the Supreme Court of the territory of Arizona, and such proceedings were thereupon had upon said appeal that the judgment was by said Supreme Court in all things affirmed; that said judgment of said District Court and the Supreme Court of the territory, now remain of record in said courts, and is unreversed, not appealed from, and in full force and effect.

It is contended by the plaintiff that these allegations of the complaint and answer do not raise any questions of fact, but only questions of law, and that upon the determination of such questions of law he is entitled to a judgment for the possession of the claims in controversy. Reduced to its simplest terms, the plaintiff's contention is this: Gaddis and Sauls having failed to do any work or perform any labor or make any improvements upon the claims in controversy during the year 1907, and having declared in their relocation notices that they had relocated abandoned ground, it followed as a legal consequence that such ground had reverted to the government of the United States and had become a part of the public domain, open to location and entry by any qualified citizen of the United States, save and except Gaddis and Sauls, each of whom, by reason of his abandonment of said claims, became disqualified and incompetent to lawfully relocate said claims or any part thereof. Can this contention be sustained?

It is provided in section 2324 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1426) that:

"On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year, * * * and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location."

Congress in the year 1893, by Act Nov. 3, 1893 (28 Stat. 6, c. 12), and again in the year 1894, by the Act July 18, 1894 (28 Stat. 114, c. 142), suspended the provisions of section 2324, requiring $100 worth of labor to be performed or improvements made during the years 1893 and 1894. The defendant in its answer, in addition to denying the plaintiff's charge of a conspiracy in 1907 on the part of Gaddis and Sauls to abandon and relocate the claims in controversy, alleges that during the year 1907 they had been informed and believed that Congress had enacted or was about to enact a law exempting all mining claims from assessment work or annual labor during that year; that, relying in good faith upon such information and belief, the said parties did not perform such annual labor or assessment work upon said claims, and, when they discovered that no such law had in fact been passed by Congress, they had no time within which to do such work within said year and in good faith, and because of having been misled

and misinformed as aforesaid they believed it necessary to relocate said claims, neither of said parties then knowing that the resumption of work upon said claims before the intervention of adverse rights would secure and preserve to them their said claims.

But it is alleged in the defendant's answer that Gaddis and Sauls continued from the 1st day of January, 1908, as before, in the possession, enjoyment, and development of said claims, and since said 1st day of January, 1908, and prior to the attempted location thereof by the plaintiff, they had done and caused to be done upon said claims many times the amount of assessment work required to be done in the year 1907, and for each and every year subsequent thereto. In other words, this allegation is in effect a declaration on the part of the defendant that it, and its predecessors in interest, and particularly Gaddis and Sauls, upon their failure to comply with the provisions of section 2324 of the Revised Statutes of the United States, with respect to the requirement of labor and work to be performed upon said claims for the year 1907, resumed work upon said claims on January 1, 1908, and before the alleged location by the plaintiff on September 28, 1910, and did the work and performed the labor required by the statute for each and every year after the year 1907.

Prior to March 12, 1907, section 3241 of the Revised Statutes of Arizona, so far as it is material to this case, provided:

"The relocation of forfeited or abandoned lode claims shall only be made by sinking a new discovery shaft and fixing the boundary in the same manner and to the same extent as is required in making an original location; or the relocator may sink the original discovery shaft ten feet deeper than it was at the date of the commencement of such location, and shall erect new or make the old monuments the same as originally required. In either case a new location monument shall be erected, and the location notice shall state if the whole or any portion of the new location is located as abandoned property, else it shall be void."

By Act March 12, 1907 (Session Laws of Arizona 1907, c. 22m, p. 27), that part of section 3241 of the Revised Statutes heretofore referred to was amended as follows:

"The location of an abandoned or forfeited claim shall be made in accordance with the provisions of paragraph 3232 * * * of the Revised Statutes of Arizona, 1901, except that the relocator may, if he so elect, perform his location work by sinking the original location shaft ten feet deeper than it was originally."

This amendment, so far as it is material to the present inquiry, consisted in providing that the location of an abandoned or forfeited claim should be made in the same manner as the original location (required by section 3232), except that the relocator might, if he so elected, perform his location work by sinking the original location shaft 10 feet deeper than it was originally. There was this further difference in the amended section. It omitted the following clause of the original section:

"And the location notice shall state if the whole or any part of the new location is located as abandoned property, else it shall be void."

With respect to this change in the requirements of the location notices, the defendant alleges in its answer that:

"In preparing the notices of relocation, the said Gaddis and Sauls had not been advised and did not know that the Legislative Assembly of Arizona of 1907 had so amended the law relative to the relocation of mining claims that it was no longer necessary to state that the same was located as abandoned ground, and therefore said parties and each of them, without any intention of abandoning said claims or the ground embraced therein, or any part thereof, believed it to be necessary to state in said location notices, and for that reason and no other, they did state therein that the said claims were relocated as abandoned ground; but the defendant says that the said Gaddis and Sauls, the predecessors in interest of this defendant, did not then or thereafter, or ever, abandon said claims or intend to abandon the same, or any part thereof."

But it is alleged in defendant's answer that between the 1st day of January, 1908, and the 12th day of March, 1908, said Gaddis and Sauls caused to be sunk upon the ground embraced within each of said claims a shaft 4 feet wide by 6 feet long, to a depth of at least 10 feet below the lowest part of the rim at the surface, each of which said shafts disclosed at the bottom mineral in place, carrying gold, silver, and other precious metals. In other words, this allegation taken in connection with the other allegations of the answer is an equivalent of an allegation that they complied with the requirements of section 3241 of the Revised Statutes of Arizona, as amended by Act March 12, 1907, with respect to forfeited or abandoned claims, notwithstanding the fact that they never intended to abandon or forfeit such claims, but had continued, without interruption, to possess and develop the same.

[1] The first question to be determined is this: Was there an abandonment of these claims by Gaddis and Sauls, as the facts are alleged in the complaint and not denied in the answer? In 1 Snyder on Mines, § 509, the term "abandonment" as used in mining law is defined, upon the authority of cited cases, as follows:

"Abandonment includes both the intention to abandon and the act by which the abandonment is carried into effect. To constitute an abandonment there must be a concurrence of the intention to abandon and the actual relinquishment of the property so that it may be appropriated by the next comer."

In section 512 of the same work the term "abandonment" is defined with respect to possessory titles in connection with the annual labor acts, as follows:

"To constitute an abandonment there must be a going away, and a relinquishing of rights, with the intention never to return. A voluntary and independent purpose to surrender whatever claim the person has to the next comer is essential. It is thus a question of act and intention, and the fact is to be found from the intention and the act, when considered together, in connection with all the circumstances in the case. The testimony of the fact of abandonment by a former owner is conclusive evidence thereof; and evidence upon this question is admissible under the general issue. But there must be an abandonment in fact: A mere belief on the part of the relocator that such is the case is not sufficient to establish one."

[2] It appears very clearly from these definitions that the abandonment of the claims in controversy by Gaddis and Sauls, or their successors in interest, is not established as a conclusion of law to be drawn from the allegations of the complaint and the admissions of the answer. The declaration of abandonment alleged to have been inserted in the notices of relocation, in ignorance of a change in the law in that

respect, is not sufficient to overcome the direct and positive allegations of the answer that an abandonment was not intended by Gaddis and Sauls and that said claims were not in fact abandoned.

The remaining question is, Was there a resumption of work under the provisions of section 2324 of the Revised Statutes of the United States, after failure to do the annual work required for the year 1907, and that is a question of fact to be determined upon the trial of the case. The motion for a judgment on the pleadings is therefore denied.

2. The plaintiff's motion to strike out paragraph 13 of the defendant's answer is upon the ground that the same fails to state facts constituting a defense to the action. The paragraph in question sets up a judgment in the state court in a case wherein the plaintiff herein was the plaintiff, and the predecessors in interest of the defendant herein were the defendants. The paragraph alleges that in the action in the state court the issues were identically the same as the issues in this cause, and that a judgment was duly made and entered in the first-mentioned cause in favor of the defendants therein, and against the plaintiff therein and herein, dismissing the said plaintiff's bill of complaint upon the merits.

[3] The objection is that it is not sufficient that the issues in the first case were the same as in the present case; the cause of action must be the same. This objection would be good if the judgment in the state court were pleaded as a bar to a judgment in this case, but I do not so understand the allegation of the answer. What is set up is that certain issues in the present case were in the former case, and, having been determined, such issues cannot be again be litigated in this case.

[4] The rule, as stated in 23 Cyc. 1215, is as follows:

"A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action."

With respect to the bar of a former judgment the rule is stated in 23 Cyc. 1216, as follows:

"A former judgment between the same parties is a bar to the maintenance of the second action only when the causes of action in the two suits are identical. But it will be conclusive and final as to any issue litigated and determined in the former suit, and coming again in question in the second suit, although the latter is brought upon an entirely different cause of action."

These two rules are supported by abundant authorities.

The court has been furnished with the pleadings and briefs in the case in the state court, and the decision of the Supreme Court of the state upon the issues in that case has been cited (Peachy v. Gaddis [Ariz.] 127 Pac. 739); but it is not within the scope of the present inquiry to determine what the issues were in that case, or whether any of those issues are involved in the present case. The court is now dealing with a question of pleading, and upon that question the court

is of the opinion that paragraph 13 is sufficient to set up a defense upon such issues in the present case as may be found, upon the trial, to have been determined in the former case.

The motion to strike out paragraph 13 of the answer is therefore denied.