[Civ. No. 5865.   Third Appellate District.—July 17, 1937.]

MAE A. CLARKE et al., Appellants, v. HARRY C. MALLORY, Respondent.

Edward R. Solinsky for Appellants.

Charles P. Snyder and George F. Snyder for Respondent.

THE COURT.—Plaintiffs are seeking to quiet title to four mining claims situated in the county of Calaveras; the Salvator Gold Mine, the Poison Oak Quartz Mine, the Pipe Log Quartz Mine, and the Sugar Pine Mine, together with all leads and gold-bearing earth and gravel, and mineral rights appurtenant thereto.

Defendant Harry C. Mallory filed an answer and cross-complaint, alleging title in himself. From the judgment in favor of Mallory these plaintiffs appeal.

The facts developed at the trial briefly are, that for many years prior to March 5, 1932, F. R. Clarke, deceased husband of plaintiff Mae A. Clarke and father of Reed M. Clarke, had owned, as community property, an individed two-thirds interest in the claims here in dispute, the remaining one-third interest being vested in plaintiff Reed M. Clarke. Some years prior to 1932, Mr. Mallory, the respondent, went to Dr. Clarke for medical treatment. A friendship grew out of this contact. On numerous occasions Dr. Clarke talked mining to Mr. Mallory, and on many occasions discussed with him the mining claims here in question. Early in 1932 the former partner of Dr. Clarke in this mining venture died. Dr. Clarke then began to talk to Mr. Mallory about turning the mines over to him on a lease. These mining claims were unpatented, and the assessment work had been done every year by Dr. Clarke up to July 1, 1932. On March 5, 1932, Dr. Clarke gave to Mr. Mallory a letter addressed to James Gambetta, whose ranch adjoined the claims and who had the mine tools in his care. This letter reads as follows:

"This is to advise you that the bearer, Mr. Mallory, and his associates, have taken over the Salvator Group of Mines, together with all improvements of every nature.

"Will you kindly deliver to him all tools, or other equipment that are now at your place, or in your possession?

"Thanking you in advance for this courtesy, I beg to remain,

"Very sincerely yours,

DR. F. R. CLARKE."

On April 21, 1932, approximately one and a half months after this letter, F. R. Clarke and Reed M. Clarke paid the current 1931–32 taxes then levied and assessed upon these claims by the county assessor of Calaveras County, and all subsequent taxes upon said properties have been paid by the plaintiffs herein and no taxes have ever been paid by defendant Mallory.

Dr. Clarke died on December 12, 1932, and by a decree of distribution his undivided two-thirds interest in and to the mining claims was distributed to his surviving wife Mae A. Clarke, plaintiff herein.

In January, 1934, Mae A. Clarke and Reed M. Clarke, as owners of said mining claims, executed a written lease thereof to Walter W. Young who, with his assignee J. A. Porter, held possession of the properties until September, 1934. In April, 1934, Mr. Mallory "jumped" these mining claims, and in July, 1934, filed an amended location, including the river and a parcel of land lying north of the river. Mallory claimed an ownership based upon this relocation after an alleged forfeiture by the owners for failure to perform the annual assessment work thereon.

Respondent claims that F. R. Clarke and Reed M. Clarke abandoned the mining claims involved in this action and that the evidence is sufficient to support the finding of the trial court to that effect, as well as the finding that there was no work or labor performed on said mining claims by the plaintiffs or their predecessors subsequent to March 5, 1932.

It is the contention of appellants that the claims were not abandoned and that a confidential relationship existed between Dr. Clarke and Mallory for several years prior to the death of Dr. Clarke, and at all times Mallory was the agent, representative or employee of Dr. Clarke and plaintiffs, and that the purported locations of the mining claims by Mallory in April and July, 1934, were and are invalid.

In support of the finding of the trial court that F. R. Clarke, predecessor in interest of Mae A. Clarke, and Reed M. Clarke abandoned the mining claims and water rights on March 5, 1932, the court relied principally upon the letter of Dr. Clarke to Gambetta hereinabove quoted. In addition to this letter Mallory testified to statements claimed to have been made by Dr. Clarke to him, about the time the letter was written, to the effect that he was turning the property over to him, and that Mallory should take the equipment from Gambetta and move the same to the mine, and advised him to post notices on the property that he, Mallory, had been in undisputed possession since March 5, 1932. This testimony was admitted as a declaration of the decedent against interest and was limited by the court to the interest of plaintiff Mae A. Clarke, the surviving wife of Dr. Clarke, but sustained an objection as to plaintiff Reed M. Clarke. There is, therefore, no evidence in the record to support the finding that Reed M. Clarke ever abandoned the property nor that Mae A.

Clarke, the surviving wife of Dr. Clarke, and owner of a community interest in the mining claims and water rights, ever abandoned the property or joined in the claimed abandonment with her deceased husband. Mallory testified that at the time of the purported abandonment Dr. Clarke told him that "he was down to see Reed the other day and he talked to Reed about *turning the mine over and drawing up some kind of a lease* whereby he was going to turn the property over to me and I was going to work it".

It will be recalled also that the evidence is without conflict and that the annual work upon the mining claims had been done by the owners for the assessment year ending July 1, 1932, and that on April 21, 1932, after the purported abandonment, Dr. Clarke and Reed M. Clarke paid the sum of $52.80 to the county assessor of Calaveras County for taxes due upon said properties for the year 1931–32.

Upon the abandonment of an unpatented mining claim the property reverts as a part of the unoccupied public domain, and the rights of the original locator are divested by such abandonment and he has nothing thereafter to convey.

Abandonment of a mining claim is a question of intention (*Taylor* v. *Middleton,* 67 Cal. 656 [8 Pac. 594]), and can be sustained only by clear proof. (*McCann* v. *McMillan,* 129 Cal. 350 [62 Pac. 31].) To constitute abandonment, therefore, of a mining claim there must be a relinquishment of all rights with the intention never to return, and with a voluntary and independent purpose to surrender the locations or claims to the next comer. (*Peachy* v. *Frisco Gold Mines Co.,* 204 Fed. 659.)

While it is true that one cotenant may abandon a mining claim as to his own interest, so as to preclude him from afterwards asserting an interest therein, he cannot abandon such claim so as to destroy the interest of the other cotenant (*O'Hanlon* v. *Ruby Gulch Min. Co.,* 48 Mont. 65 [135 Pac. 913]; *Miller* v. *Chrisman,* 140 Cal. 440 [73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63]; *Chrisman* v. *Miller,* 197 U. S. 313 [25 Sup. Ct. 468, 49 L. Ed. 770]), and in view of the fact that there is no evidence in the record that Reed M. Clarke abandoned his interest in the property, nor by Mae A. Clarke, owner of a community interest in the two-thirds interest owned by her deceased husband, we must hold that

as to those interests there is not sufficient evidence in the record to support such finding.

Neither do we believe that there was sufficient evidence to support the finding of abandonment on the part of Dr. Clarke. The many conversations had between Dr. Clarke and Mallory as to operating the mine under the lease, the ambiguity of the letter of Clarke to Gambetta, which can be construed to refer to a lease as well as an abandonment, the payment of the taxes by Dr. Clarke after the alleged abandonment, the fact that the assessment work had been done for a period extending some five months beyond the alleged abandonment, are all facts inconsistent with the claim of abandonment. In construing the letter from Clarke to Gambetta we also have in mind the provisions of section 1866 of the Code of Civil Procedure, which provides that when an instrument is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former must be adopted. In this connection it seems but natural for Dr. Clarke to retain his property and to hold the same for a valuable consideration rather than to abandon it.

It is next claimed by appellant that a confidential relationship existed between Mallory and the Clarkes. Having in mind the general rule that where the evidence is conflicting, the findings of the trial court will not be disputed, we will confine ourselves to defendant's own testimony and to the undisputed fact of the relocation of the mining claims by Mallory to determine this claim of appellants. We find in the testimony of Mallory that for a period of approximately six years prior to the death of Dr. Clarke he met him frequently and discussed many times the particular mining claims and water rights here in dispute. That Dr. Clarke gave him permission to visit the claims, and prospect thereon, for which he paid Dr. Clarke nothing. Mr. Mallory was advised by Dr. Clarke that he knew of no better investment for a young man than to take up mining and was told by Dr. Clarke that he would sell him the mine, but Mallory said that he could not afford to buy it, and the doctor told him he would help him financially, and that he, Mallory, could have all he could take out of the mine for a period of years which could thereafter be determined. After this, and for several years, Mallory went up to the mine, and upon his

return to Stockton would drop into the offices of Dr. Clarke and talk about the mine and report to Dr. Clarke the work done on the mine.

On January 15, 1934, the plaintiffs herein, as owners, executed a written lease to Walter W. Young, which was superseded by another lease to Young and assigned by Young to Porter in June, 1934. Operations were resumed upon the mining claims on July 10, 1934. In March, 1934, Mallory, at the request of Reed M. Clarke, accompanied Clarke on an inspection tour of the mine for the purpose of showing the property to Mr. Young. The first notice of location filed by Mallory was recorded April 7, 1934, approximately two years after the asserted abandonment. After that time Mr. Mallory called upon Mr. Reed M. Clarke in his office in San Francisco and there discussed with him the matter of compensation for his services in and about the mine. About two weeks later Mallory met Mr. Reed M. Clarke and Mrs. Clarke at her residence in Stockton, where they told Mr. Mallory there was an option in force on the mine at that time, and if the property was sold it would net approximately $75,000 and that they were willing to give him ten per cent of that amount, whereupon Mr. Mallory stated that he would think over that proposition. It also appears in evidence that some time prior to that, Mr. Reed M. Clarke had told Mallory, so he testified, that he would receive fifty per cent of whatever the mine was sold for, which proposition was satisfactory to Mr. Mallory. Some time after these meetings Mr. Mallory wrote a letter to Mr. Reed M. Clarke in Redwood City, California, wherein was set forth the letter from Dr. F. R. Clarke to James Gambetta, and then proceeded as follows:

"I think you will understand just how I felt in regards to owning the mine. I have spent some time thinking on the agreement and as I see it, should this proposed deal not materialize, I would find myself completely out of consideration, and all the years to have been spent in vain. It seems to me, *that in fairness to myself,* I should at least be entitled, first—to a ten per cent ownership of the mine properties, and second—ten per cent of all monies received or accrued from the sale or lease of the mine. If you agree to this, I will then sign a quit claim on the property, and hope for the success of the deal. Under that arrangement I should be

62

able at all times to go over the property and protect *our common interest.*

> "Very truly yours,
> "HARRY C. MALLORY."

From the foregoing it would appear that after the relocation of the mining claims Mallory still dealt as an agent and assumed a position inconsistent with his present claim of ownership. It would appear that Mallory was seeking compensation by way of an interest in the royalty for his work, and by his statements in the letter inferred he would have an interest in common with the Clarkes if the proposal were accepted.

It was testified to by Reed M. Clarke and confirmed by Mallory that he, Clarke, knew nothing of the relocation of the claims by Mallory until the middle of August, 1934, when he received a title report, and that in the previous conversations between Mallory and the Clarkes nothing was ever said by Mallory as to his claim of ownership.

Mallory testified that he posted notices of location of the claim between the 7th and the 14th of April, 1934, and that thereafter, between the 14th and 19th days of July, 1934, he posted amended notices of relocation, which were recorded in the office of the county recorder of Calaveras County. Regardless of whether or not Mallory was an agent or employee of the Clarkes, or that a relationship of trust and confidence existed between them, thereby invalidating his relocations, it must be recalled that these relocations are invalid because prior to the completion of said relocations by the posting of the amended notices the Clarkes had resumed work on the claims through their lessee Young and his assignee Porter.

Section 1426h of the Civil Code provides that where a locator apprehends that his original location notice is defective or erroneous, he may file an amended notice, provided that such amended location does not interfere with existing rights of others at the time of posting and filing such amended notice; and a location can only be so amended where the object thereof is to cure obvious defects and there is no attempt to include new ground. (*Gobert* v. *Butterfield,* 23 Cal. App. 1, 4 [136 Pac. 516].) It is established in evidence that the plaintiffs executed a written lease to Walter W. Young in January, 1934, which lease continued in force until superseded by an-

other lease to Young in June, 1934, and assigned to Porter, and that under this lease work was commenced on July 10, 1934, and such work continued on the property until the latter part of September, 1934. According to the evidence the amended location notices were not posted upon the property or recorded until more than a week after Porter resumed possession and commenced active operations thereon; and it is testified by Porter that between July 10th and September, 1934, he performed work to the value of more than $400, being more than the statutory amount of annual labor required to be performed upon the said mining claims, and that he executed an affidavit of labor for the assessment year ending July 1, 1935, showing the performance of said amount of labor.

Although it appears from the record that plaintiffs did not perform the annual assessment work for the years ending July 1, 1934, and did not during said years file notices of desire to hold said mining claims under the acts of Congress which suspended performance of such assessment work, such lapse on the part of plaintiffs did not *ipso facto* forfeit their rights to such claims. United States Revised Statutes, section 2324, provides that failure to do assessment work upon a mining claim does not operate to terminate the locator's right in favor of a person who has merely taken possession of the claim; the sole effect of the failure, there being no abandonment, was to throw the land open to location to others, and in the absence of such other location, the original claimant's right to resume work and to hold his claim remains. (*Madison* v. *Octave Oil Co.*, 154 Cal. 768 [99 Pac. 176].) Mallory admits that when he went upon the mining claims between July 14th and 19th, 1934, to amend his notices of location, Mr. Porter was then working upon the property.

In *Pharis* v. *Muldoon*, 75 Cal. 284 [17 Pac. 70], it was held that one who attempts to relocate a claim after default in the performance of assessment work must complete his location by marking the boundaries and fulfilling the other requisites of location before resumption of work by the first locator.

Believing as we do that from Mallory's own testimony that he was at all times the agent and representative of plaintiffs seeking compensation for his services, his locations and amended relocations would therefore be void. Mallory had no written contract, but he claimed the under-

standing with Reed M. Clarke was that he was to have a fifty per cent interest in the sale price. When an agent, employee or trustee attempts, in violation of contract or in breach of a trust, to relocate or obtain title to a claim in his own name he will be charged in equity as trustee of the rightful owner, and will not be permitted to secure any advantage by such attempted relocation. (U. S. C. A., title 30, par. 28, note 385; also notes, 371-390.)

Some claim is made to certain water rights, but in view of the conclusion we have reached we do not deem it necessary to consider the water rights except to state that respondent failed to establish any claim to any water rights.

The burden of proof to establish abandonment as well as relocation of the mining claims being upon defendant Mallory, he being required by law to establish the same by clear and convincing proofs, we are of the opinion that he has failed to sustain such a burden, and for that reason the testimony and evidence fails to support the material findings of the court, and the judgment appealed from must be reversed. It is so ordered.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1937.