**PRECIOUS OFFERINGS MINERAL EXCHANGE, INC., Plaintiff–Appellant,**

v.

**David J. McLAIN and LaDonna J. McLain, Defendants–Appellees.**

No. 07CA1264.

Colorado Court of Appeals, Div. V.

Aug. 7, 2008.

Bratton Hill, LLC, L. Richard Bratton, Vicki L. Spencer, Gunnison, Colorado; Don H. Sherwood, Grand Lake, Colorado, for Plaintiff–Appellant.

Wilderson, O'Hayre, Dawson & Norris, P.C., Rufus O. Wilderson, Gunnison, Colorado, for Defendants–Appellees.

Opinion by Judge CRISWELL.*

In this dispute over the existence of an easement across real property owned by defendants, David J. McLain and LaDonna J. McLain, plaintiff, Precious Offerings Mineral Exchange, Inc., appeals the judgments entered against it. We affirm.

Plaintiff owns several unpatented mining claims located on Bureau of Land Management (BLM) land in Gunnison County. In the 1940s, the federal government, pursuant to the Defense Highway Act of 1941, built an access road from a public highway to the land where these mining claims are located. The federal government concluded that the raw materials found at that location were "of importance to the war effort." The access

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2007.

road crosses defendants' land, and defendants' predecessor executed a "Right of Entry," allowing the government access to the property for the purpose of constructing the road.

Shortly after plaintiff purchased the mining claims in 1999, defendants locked a gate across the access road and refused to allowed plaintiff to use that portion of the access road which crossed their property. In 2005, plaintiff brought this action asserting a right to use the access road and arguing that there was an easement by express grant, an easement by estoppel, a prescriptive easement, and a public road by virtue of construction with government funds. Alternatively, plaintiff sought to condemn a way of necessity.

Defendants moved to dismiss. Because the motion to dismiss included supporting documents that went beyond the complaint's allegations, the trial court treated it as a motion for summary judgment. The court granted summary judgment for defendant on all of plaintiff's claims, except the claim based on an express easement.

The trial court then heard evidence on the express easement claim. After the close of evidence, plaintiff filed a motion to amend the complaint to conform to the evidence, seeking to add a claim for easement by implication. The trial court granted the motion to amend. The trial court then concluded that plaintiff had established neither an express easement nor an easement by implication.

Plaintiff appeals from the grant of summary judgment in defendants' favor and the judgment entered after a bench trial dismissing plaintiff's easement by implication claim. It does not appeal from the judgment dismissing its express easement claim.

## I.

Plaintiff first argues that the trial court erred in concluding that it did not have standing to assert a private condemnation claim. We disagree.

We review a trial court's grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995). A party is entitled to summary judgment if the pleadings, discovery materials on file, and the affidavits of the parties, if any, establish that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c).

Despite generally prohibiting private takings, Colorado law allows for private condemnation of easements of necessity: "Private property shall not be taken for private use unless by consent of the owner, except private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes." Colo. Const. art. II, § 14; *see* § 38–1–102(3), C.R.S.2007 ("Under the provisions of this section, private property may be taken for private use, for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic, or sanitary purposes.").

In *Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519, 520 (Colo.1982), the holder of federal oil and gas leases sought to condemn a private way of necessity. There, the trial court dismissed the petition for condemnation, concluding that the right to condemn is "only available to owners of fee interests and not available to federal oil and gas lessees." *Id.* The supreme court affirmed. *Id.*

First, the court recognized that article II, section 14 of the Colorado Constitution and section 38–1–102(3) are ambiguous as to whether a lessee may assert the power of condemnation. *Id.* at 522. However, reasoning that it must narrowly construe "the condemnation power delegated pursuant to legislative enactment," the court resolved this ambiguity against the lessee and concluded that it did not have standing to bring a condemnation action. *Id.; see Akin v. Four Corners Encampment,* 179 P.3d 139, 144 (Colo.App.2007) ("Because the power to condemn private property is in derogation of the right to own and keep property, the exceptions in art. II, § 14 must be interpreted narrowly, with any uncertainty in the ambit of the power to condemn resolved against the person asserting that power.");

see also Clyde O. Martz, Rebecca Love & Charles L. Kaiser, *Access to Mineral Interests by Right, Permit, Condemnation or Purchase*, 28 Rocky Mtn. Min. L. Inst. 1075, 1115 (1982) (opining that *Coquina* restricts condemnation authority to fee owners).

The supreme court also rejected the *Coquina* plaintiff's argument that such a result was contrary to public policy. Because oil and gas leases are temporary, the supreme court was concerned that the owner of the servient estate would be subject to multiple condemnation actions; the court concluded that subjecting a property owner to multiple condemnation lawsuits would be undesirable. *Coquina*, 643 P.2d at 522. At the same time, the court noted that the fee owner, the federal government, could condemn an easement to serve the leases and that it was the appropriate body to make that determination. *Id.* at 522–23.

Whether *Coquina* established the rule that only fee simple absolute owners may exercise the right of private condemnation under the constitution and statute is unclear. Whether this grant of authority contemplates its exercise by the owner of a lesser interest, such as the owner of a fee simple determinable or even a life estate, is an issue not addressed by *Coquina*. We conclude, however, that a temporary possessory interest, similar to the interest held by a federal oil and gas lessee, is insufficient under those provisions to allow the owner of such an interest to condemn property for a private purpose.

We also conclude that the interest in unpatented mining claims held by plaintiff is more similar to the interest held by an oil and gas lessee than it is to a fee simple interest.

■ Owners of unpatented mining claims "hold fully recognized possessory interest in their claims." *United States v. Locke*, 471 U.S. 84, 104, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). However, the United States is the owner of the underlying fee title. *Id.* Unpatented mining claims can be abandoned, and, at least for this reason, they are only temporary possessory interests, similar to oil and gas leases. 43 U.S.C. § 1744 (failure to file certain instruments by the holder of unpatented mining claims constitutes abandonment); *see Laguna Development Co. v. McAlester Fuel Co.*, 91 N.M. 244, 572 P.2d 1252, 1255 (1977) ("Upon the abandonment of an unpatented mining claim the property reverts as a part of the unoccupied public domain, and the rights of the original locator are divested by such abandonment and he has nothing thereafter to convey." (quoting *Clarke v. Mallory*, 22 Cal.App.2d 55, 70 P.2d 664, 667 (1937)) ).

In this case, the parties agree, and the record demonstrates, that unpatented mining claims have been established and later abandoned at this location several times since the federal government built the road in the 1940s. Thus, as with oil and gas leases, unpatented mining claims pose the risk of multiple condemnation actions. Likewise, it is undisputed that the federal government, the fee owner, could condemn an easement over defendants' property. As a result, bearing in mind that we must narrowly construe the private right of condemnation, we conclude that the owner of an unpatented mining claim, like a federal oil and gas lessee, does not have standing to bring an action to condemn an easement of necessity.

## II.

■ Plaintiff next argues that the trial court erred by concluding that plaintiff failed to establish an implied easement. Specifically, plaintiff argues that the trial court erred when it limited its implied easement analysis to the question whether plaintiff established an easement implied from the prior use of the road. Instead, plaintiff contends that "other circumstances" surrounding the creation of the access road created an implied easement appurtenant to the federal land where the mining claims are located. Although we agree that easements can be implied for reasons other than prior use, we disagree that plaintiff established any type of implied easement.

■ An easement is created if the owner of the servient estate enters into a contract or makes a conveyance, which complies with the Statute of Frauds or an exception to the Statute of Frauds, with the intent to create a servitude. Restatement (Third) of Prop.:

Servitudes § 2.1 (2000), *cited in Lobato v. Taylor,* 71 P.3d 938, 950 (Colo.2002). Implied easements need not comply with the Statute of Frauds:

> Servitudes that are not created by contract or conveyance include servitudes created by dedication, prescription, and estoppel. Those which are not created by express contract or conveyance are the implied servitudes, which may be based on prior use, map or boundary descriptions, necessity, or other circumstances *surrounding the conveyance of other interests in land,* which give rise to the inference that the parties intended to create a servitude.

*Lobato,* 71 P.3d at 950 (quoting Restatement, *supra,* § 2.8 cmt. b) (emphasis added).

The term "implied easement," as used by *Lobato,* therefore, is a term of art. An implied easement typically arises "on severance of a single possessory interest into two or more possessory interests. Implied servitudes may also arise on the severance of present and future interests, as in the creation of leasehold estates. The creation of profits and easements may also provide the basis for implication of servitudes." Restatement, *supra,* § 2.11 cmt. d; *see Lobato,* 71 P.3d at 950 ("[T]he implied servitudes ... may be based on ... other circumstances surrounding the *conveyance of other interests in land* ...." (emphasis added) ).

The Restatement identifies four traditional types of implied easements—easements implied from prior use, easements implied from map or boundary reference, easements implied from a general plan, and easements created by necessity, Restatement, *supra,* §§ 2.12–2.15—all requiring the severance of a single possessory interest. The Restatement also identifies two alternative methods to obtain an easement without the requisite express conveyance: an easement by estoppel and a prescriptive easement. *Id.* §§ 2. 10, 2.16–2.17.

Here, in the district court, plaintiff asserted claims for a prescriptive easement and an easement by estoppel. However, plaintiff does not argue that the trial court erred in entering judgment against it on those claims, nor does it argue that it can establish any of the traditional implied easements.

[5] In addition to implied easements, a court may find an express easement, where a writing which purportedly conveys an easement is ambiguous, based on extrinsic evidence to determine "the actual intention of the parties" and "to explain and give context to the language." *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1236–37 (Colo.1998). The *Lazy Dog Ranch* court identified the following circumstances relevant to interpreting an express easement:

> the location and character of the properties burdened and benefited by the servitude, the use made of the properties before and after creation of the servitude, the character of the surrounding area, the existence and contours of any general plan of development for the area, and [the] consideration paid for the servitude.

*Id.* at 1237 (quoting Restatement, *supra,* § 4.1 cmt. d).

Here, plaintiff argued at trial that the Right of Entry, executed in the 1940s, the circumstances surrounding its execution, the construction of the access road, and its subsequent use all show an intent to create an easement appurtenant to the federal land. However, the trial court, after considering the extrinsic evidence presented, concluded that it was insufficient to establish an express easement. Plaintiff does not appeal from this conclusion.

Consequently, the proper interpretation of this Right of Entry is not an issue presented to us, and we express no opinion upon the subject. We do conclude, however, that the trial court did not err in concluding plaintiff failed to establish an easement by implication.

The judgments are affirmed.

Judge GRAHAM and Judge LICHTENSTEIN concur.